## NORRIS et al. v. UNITED STATES.
### No. 11398.

Circuit Court of Appeals, Fifth Circuit.
Jan. 15, 1946.

Rehearing Denied Feb. 9, 1946.

Bernard A. Golding, of Houston, Tex., for appellants.

Brian S. Odem, U. S. Atty., and Joseph W. Cash and James K. Smith, Asst. U. S. Attys., all of Houston, Tex., for appellee.

HOLMES, Circuit Judge.

Appellants were convicted of robbery under 18 U.S.C.A. § 99, and sentenced to pay a fine and serve a term in prison. They severally seek reversal of the judgments on the grounds that the trial court erred (a) in overruling their demurrers and (b) in denying their motions for directed verdicts.

Count one of the indictment, upon which the convictions rest, is in the language of the statute. It charges, inter alia, that the appellants "did rob one Frank Clarkson of an automobile (describing it) belonging to the United States" contrary to the statute and against the peace and dignity of the United States. The proof, which amply supports the charge, shows that Clarkson was a federal game warden using a government owned car when the robbery was committed. He was in the car when the appellants, by violence and by putting him in fear, compelled him to surrender control and possession thereof to them.

Robbery in its usual and ordinary sense, and as used in the statute, means the felonious taking of property from the person of another by violence or by putting him in fear. A felonious taking in his presence is a taking from the person when it is done with violence and against his will. The taking must be by violence or putting him in fear; but both of these circumstances need not concur; "for if a man should be knocked down, and then robbed while he is insensible, the offense is still robbery;" and if the party be put in fear by threats and then robbed, it is not necessary that there should be any greater violence. The violence or putting in fear must be at the time of the act or immediately preceding it. One who is present and aids or abets a robbery is punishable as a principal, though he receives none of the money; and the amount taken is immaterial.

After the demurrers were overruled, the appellants pleaded not guilty and were put

to trial upon the merits. The case was tried exactly as it would have been if the indictment had been perfect, and just like it would be if a new trial were granted. The questions presented on this appeal are whether the indictment was defective and, if so, whether the substantial rights of the parties were prejudicially affected.

By the Act of February 26, 1919, 28 U.S.C.A. § 391, it is provided that, on the hearing of any appeal, the court shall give judgment after an examination of the entire record, without regard to "technical errors, defects, or exceptions which do not affect the substantial rights of the parties." This is a highly remedial statute, and should not be confused with the earlier statute (18 U.S.C.A. § 556) to the effect that no indictment shall be deemed insufficient by reason of any defect of form only, which shall not tend to the prejudice of the defendant. One statute requires us to examine the entire record and give judgment without regard to errors that do not affect substantial rights; the other deems insufficient all formal defects in indictments that do not "tend to the prejudice" of the accused. Reading the two statutes together, it seems that if substantial rights are not affected by an error in the indictment, such error does not tend to the prejudice of the defendant. Therefore, after an examination of the entire record, if we find that the substantial rights of the appellants were not prejudicially affected, we are constrained to give judgment without regard to any imperfection in the indictment.

In its last analysis, our decision must rest upon the later statute (28 U.S.C.A. § 391), and not upon the earlier one (18 U.S.C.A. § 556), which is directed primarily to the trial court and requires it to disregard any imperfection in the matter of form that "shall not tend to the prejudice of the defendant." The later statute is directed to the reviewing court and requires it, after examining the entire record, to disregard any error of the trial court that, regardless of its tendency, caused no prejudice to the defendant. This means that no new trial is to be granted for an abstract error which the whole record shows did no practical harm to the defendant.

We think the questions here turn upon whether the defendants were fully informed of the nature and cause of the accusation against them. If so, they were not prejudiced by the omission from the indictment of a distinct and separate allegation that the robbery was perpetrated by violence or by putting in fear. Since the omitted elements are included in the meaning of the word rob when used in an indictment, we think the substantial rights of the defendants were not affected by the omission. By turning to a dictionary, the appellants could have informed themselves that the word rob means, in law, "to take the property of (any one) from his person, or in his presence, feloniously and against his will, by violence or by putting him in fear."[1]

Technical pleading would require only that and be substituted for or between "by violence or by putting him in fear," otherwise the definition in the dictionary contains all the elements required by the most punctilious observance of common-law pleading. The plain mandate of the statute is that an error of this character should be disregarded on appeal.

It is no longer necessary in the federal courts to follow the old common-law rules of criminal pleading; nor is it required to charge the offense in the language of the definition of the words used in the statute. There is only one exception to the rule that an indictment in the language of the statute is sufficient. The exception applies where the words of the statute do not contain all the essential elements of the offense, as in United States v. Carll, 105 U.S. 611, 26 L.Ed. 1135, wherein a statute against passing counterfeit money failed to mention the scienter. In a later decision, the Carll case was distinguished; the court said that it is for the defendant to show that greater particularity is required; and that where the statute completely covers the offense, the indictment need not be made more complete.[2]

In the instant case, the defendants never asked for a bill of particulars, but requested the court to charge the jury on the subject of robbery. The court gave the requested charge, which dealt fully with the meaning of the word rob and the elements of the offense of robbery. There was no exception to the charge, and no point with reference to it is made in this court. Finally,

---

[1] Webster's International Dictionary.

[2] Ledbetter v. United States, 170 U.S. 606, 18 S.Ct. 774, 42 L.Ed. 1162.

the word rob, as used in the statute and in the indictment, has a fixed meaning, is unambiguous, and definitely gave the defendants knowledge of what they would have to meet on the trial. A very old case, cited in Ledbetter v. United States, supra, is that of United States v. Wilson, Fed.Cas.No. 16,730, which involved a trial for robbery of the mail. It is said therein:

"There is no rule of law better settled than this; that where a word or a set of words has received a fixed and determined meaning, and is afterwards used in a law, it is with a reference to such meaning, as much so as if that meaning had been superadded as a definition. It is on this principle that the word 'rob' and 'robbery' is considered as defined by its mere use and adoption in a law." [3]

The practice of using the word rob without defining it has been sustained in other indictments. In Vane v. United States, 9 Cir., 254 F. 32, 34, the court held as follows:

"The indictment, however, charges robbery of the custodian of the mail, and not an assault with intent to rob him. There is an allegation of an assault, but the charge itself is a robbery, and the words that defendants did willfully, unlawfully and feloniously rob are sufficient."

See also Hewitt v. United States, 8 Cir., 110 F.2d 1; Weisman v. United States, 8 Cir., 1 F.2d 696.

■ The function of a bill of particulars is to cure omissions of details that might enable the defendant to prepare his defense, and to protect him against a second prosecution for the same offense. In Tubbs v. United States, 8 Cir., 105 F. 59, 61, the court said:

"Defendants in this class of cases commonly affect ignorance of what they are indicted for, and great apprehension lest they shall be indicted a second time for the very same offense, and be unable to prove by the record a former conviction or acquittal. No case of the kind has ever occurred, or is ever likely to occur, but the affected apprehension of each defendant that it may occur in his case is perennial. The supreme court has put a quietus on the

stock objections by repeatedly pointing out that the defendant may apply for a bill of particulars * * *, and that parol evidence is always admissible, and sometimes necessary, to establish the defense of prior conviction or acquittal."

See also Rosen v. United States, 161 U.S. 29, 16 S.Ct. 434, 480, 40 L.Ed. 606; Durland v. United States, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709; Wharton's Criminal Pleading & Practice, Section 481; 2 Bishop's Criminal Procedure, Section 816.

Another contention of appellants is that there was a fatal variance between the indictment and the proof. The offense occurred in Brazoria county near the county line between Brazoria and Fort Bend counties, the latter being erroneously named as the scene of the crime. Both counties are within the same division of the Southern District of Texas. In addition to the record in this case, parol evidence, if necessary, will afford the appellants full protection against a second prosecution for the same offense. It has been held in several decisions that proof of the commission of the offense in a county other than the one alleged in the indictment does not constitute a fatal variance, provided the commission of the offense occurred in the same venue as alleged, and within the jurisdiction of the court.[4]

■ No charge was requested in the court below as to the location of the offense, and none was given. It is not necessary to prove the exact location of the offense alleged in the indictment, provided it is proven to be within the jurisdiction of the court.[5] The distinction lies in the difference between alleging a specific and a general location. If the pleader elects to name the premises, then proof thereof must be made to avoid surprising the defendant; but no precise location was named in this indictment, and the rule of proof within venue and jurisdiction applies. The federal statute (28 U.S.C.A. § 189) shows that both Brazoria and Fort Bend counties were situated within the Galveston Division of the Southern District of Texas. The evidence clearly demonstrates that the defendants knew exactly what occurred and were not surprised. It is obvious that this con-

[3] 28 Fed.Cas. page 706.

[4] United States v. Smith, Fed. Case No. 16322; Flack et al. v. United States, 8 Cir., 272 F. 680; Heitler v. United States, 7 Cir., 280 F. 703; McDonough v. United States, 9 Cir., 299 F. 30; Day v. United States, 8 Cir., 28 F.2d 586; Philyaw v. United States, 8 Cir., 29 F. 2d 225; United States v. Perlstein, 3 Cir., 126 F.2d 789.

[5] Ledbetter v. United States, 170 U. S. 606, 18 S.Ct. 774, 42 L.Ed. 1162.

viction may be pleaded in bar of a future prosecution for the same offense.

The judgment appealed from is Affirmed.