**Roy J. IRBY, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Civ. A. No. 668–65.

United States District Court
District of Columbia.

Dec. 24, 1965.

William L. Slover, Washington, D. C., for petitioner.

David C. Acheson, U. S. Atty., Charles T. Duncan, Principal Asst. U. S. Atty., Oscar Altshuler and Earl J. Silbert, Asst. U. S. Attys., for respondent.

ROBINSON, District Judge.

Petitioner entered pleas of guilty to offenses of housebreaking [1] and robbery [2] charged in two counts of a nine-count indictment. He was sentenced to consecutive terms of imprisonment of from two to eight years on the housebreaking

1. "Whoever shall, either in the night or in the daytime, break and enter, or enter without breaking, any dwelling, bank, store, warehouse, shop, stable, or other building, or any apartment or room, whether at the time occupied or not, or any steamboat, canal boat, vessel, or other watercraft, or railroad car, or any yard where any lumber, coal, or other goods or chattels are deposited and kept for the purpose of trade, with intent to break and carry away any part thereof or any fixture or other thing attached to or connected with the same, or to commit any criminal offense, shall be imprisoned for not more than fifteen years." D.C.Code § 22–1801 (1961).

2. "Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual posession of another anything of value, is guilty of robbery, and any person convicted thereof shall suffer inprisonment for not less than six months nor more than fifteen years." D.C.Code § 22–2901 (1961).

count and from four to twelve years on the robbery count. On the ground that the two offenses were committed by a single series of chronologically related events, he now contends that the sentences could not validly have been made to operate consecutively. However, assuming even the correctness of his factual premise [3] and the propriety of the remedy utilized,[4] this challenge cannot prevail.

In resolving the question presented in this litigation, "the statutes are first examined to ascertain if they will bear interpretation as creating separate offenses. If so the court then inquires whether Congress also intended 'to pyramid the penalties' [citation omitted] or only to establish a different degree or type of offense." [5] Indisputably, the counts to which petitioner pleaded guilty charged independent crimes. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." [6] The housebreaking count charged and made necessary the proof of the entry of a dwelling with an intent to steal property, but proof of an entry is not essential to the robbery count. At the same time, the robbery charge required proof of a taking, in a particular manner, of something of value from the victim's person or immediate actual possession, facts that are not essential elements of housebreaking.

In several types of situations unlike that presented here, principles for the application of which petitioner contends have been applied to preclude the imposition of consecutive sentences although two or more penal provisions were violated. One type has involved a single act affecting a single object;[7] others varied only in that the single act affected multiple objects,[8] or a single ob-

---

3. Since petitioner was convicted and sentenced on pleas of guilty, the only information available in this regard is contained in the two counts to which the pleas were entered. The housebreaking count charges that on a specified date petitioner and another entered a dwelling with intent to steal property. The robbery count charges that on the same date petitioner and the other, "by force and violence and against resistance and by sudden and stealthy seizure and snatching and by putting in fear, stole and took" certain property "from the person and from the immediate actual possession of" one of the occupants. The transcripts of the proceedings upon the pleas and the sentencing add nothing in this regard, and no evidence on the point was presented at the hearing. Compare Bell v. United States, 349 U.S. 81, 82, 75 S.Ct. 620, 99 L.Ed. 905 (1955) and Morgan v. Devine, 237 U.S. 632, 637, 35 S.Ct. 712, 59 L.Ed. 1153 (1915), where the facts connecting the offenses in question were admitted.

4. Petitioner seeks relief by way of a motion pursuant to 28 U.S.C. § 2255, and the respondent does not question his choice of remedy. See Ladner v. United States, 358 U.S. 169, 172–173, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958). In any event, the motion can be treated alternatively under F.R.Crim.P. 35 to the extent that petitioner's claim is rested upon matter appearing on the face of the indictment. See Heflin v. United States, 358 U.S. 415, 418, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); Callanan v. United States, 364 U.S. 587, 589 n. 3, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961); Davenport v. United States, 353 F.2d 882 (D.C.Cir. 1965).

5. Ingram v. United States, 353 F.2d 872 (D.C.Cir. 1965).

6. Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

7. Ingram v. United States, supra note 5 (consecutive sentences cannot be imposed on convictions of assault with intent to kill and assault with a dangerous weapon based on a single assault with a knife).

8. Ladner v. United States, supra note 4 (consecutive sentences on each of two counts of assaulting a Federal officer improper where two officers were wounded by a single discharge of a shotgun); Bell v. United States, supra note 3 (consecutive sentences improperly imposed on two counts of violation of the Mann Act, each count involving a different woman transported on the same trip in the same vehicle).

ject in more than a single way.[9] In each case the crucial question was whether single or multiple penalties had been prescribed, and the statutes were unclear on that score. In each the doubt was resolved adversely to multiple punishment conformably with the policy that "[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity."[10] But it goes without saying that Congress has the power to cumulate penalties for different offenses, even though they proceed from a single act.[11]

Somewhat more removed, but still in the same general legal area, are situations wherein singly inspired multiple act transactions, not rationally divisible either chronologically or spatially, violate more than a single penal provision. Where Congress has not clearly indicated its will as to single or multiple punishments, the policy of lenity has again been applied, as in the simpler types, to resolve the doubt in favor of but one.[12] Cases in which this was done have generally involved violations of different sections of one general act, or different but complementing statutes devoted to a single legislative scheme, a circumstance underscoring the probability that a stacking of sentences was not intended. But where Congress has disclosed its purpose to penalize particular acts or groups of acts as separate units, that effect is not avoided simply because those units happen to be components in a larger transaction.[13]

9. Davenport v. United States, supra note 4 (consecutive sentences cannot be imposed for assault with a dangerous weapon and manslaughter arising from the death of the person assaulted where both offenses arose from the single act of shooting the victim).

In United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952), it was held that separate breaches of duties with respect to different employees under the Fair Labor Standards Act arising from a single course of conduct do not create multiple offenses. See also In re Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887).

10. Bell v. United States, supra note 3, 349 U.S. at 83, 75 S.Ct. at 622. See also Ladner v. United States, supra note 4, 358 U.S. at 177–178, 79 S.Ct. 209; Prince v. United States, 352 U.S. 322, 328–329, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); United States v. Universal C.I.T. Credit Corp., supra note 9, 344 U.S. at 221–222, 73 S.Ct. 227.

11. Cases involving violations of the narcotic laws perhaps provide the clearest example. Blockburger v. United States, supra note 6 (separate offenses supporting consecutive sentences arise from two sales made at different times to the same person, as well as from a single sale violative of two different provisions); Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958) (single sales of narcotics on each of two different days, each sale violating three different provisions, supported three consecutive sentences for the sale on each day, the sentences for the sale on the first day operating concurrently with those for the sale on the second day). See also Harris v. United States, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959); United States v. Daugherty, 269 U.S. 360, 46 S.Ct. 156, 70 L.Ed. 309 (1926).

12. Violations of the Federal Bank Robbery Act are notable examples. Prince v. United States, supra note 10 (consecutive sentences cannot be imposed for bank robbery and entering a bank with intent to commit robbery when committed in the same transaction); Heflin v. United States, supra note 4 (consecutive sentences cannot be imposed for taking property by force and violence and receiving the property stolen). See also Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961) (consecutive sentences cannot be imposed for stealing money from a commissary store at a Federal naval base and receiving and concealing part of the same money).

13. A number of cases involving postal offenses fall within this category. Morgan v. Devine, supra note 3 (consecutive sentences may be imposed for forcibly breaking into a post office and for stealing property after the breaking); Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915) (consecutive sentences may be imposed for each of six acts, committed on the same occasion, of cutting and opening a sack of mail). See also Badders v. United States,

Completely outside these groups, however, are situations wherein, irrespective of continuity in criminal conduct and intent, the legislative purpose to prescribe independent penalties is discernible. In such cases, the normal rule is applied that separate punishment may be visited for truly separate offenses.[14] Thus conspiracy to commit an offense and the substantive offense are separate, and may be punished separately.[15] Both the possession of liquor and its subsequent sale may be penalized where the possession and the sale are made distinct legal infringements.[16] Agreeing to receive compensation and actually receiving it, both in violation of law, likewise are different crimes.[17]

In similar fashion, the same acts and words addressed to a public official create separate offenses when they violate different laws that prohibit boisterous language and the insulting of a public officer.[18] Mail fraud and causing stolen property to be transported in interstate commerce are separate although the subject of each and its movement are the same.[19] Assault with a dangerous weapon and carrying that weapon are independent offenses and support independent sentences.[20] Consecutive sentences may be imposed for housebreaking and assault with a dangerous weapon,[21] or robbery and assault with such a weapon,[22] although committed in the course of a single transaction. And forcible entry of a post office with intent to steal and actually stealing property therein provide separate bases for such sentences.[23]

Each of the offenses to which petitioner entered pleas of guilty is historically an independent crime. Robbery and burglary—the forerunner of housebreaking—were, as every lawyer knows, different common law offenses. Each in that character became a part of the general law of the District of Columbia,[24] and as late as 1874 their common law sep-

240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916); In re De Bara, 179 U.S. 316, 21 S.Ct. 110, 45 L.Ed. 207 (1900); In re Henry, 123 U.S. 372, 8 S.Ct. 142, 31 L.Ed. 174 (1887).

14. Reference has already been made, supra note 11, to cases involving violations of the narcotic laws.

15. Callanan v. United States, supra note 4. See also Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946).

16. Albrecht v. United States, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1927).

17. Burton v. United States, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057 (1906).

18. Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911).

19. Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), where separate convictions of the two offenses were rested on proof of delivery to a bank in Texas of a check drawn on a California bank which the former later mailed to the latter.

20. Kendrick v. United States, 99 U.S. App.D.C. 173, 238 F.2d 34 (1956).

21. Cross v. United States, 354 F.2d 512 (D.C.Cir. 1965).

22. United States v. Bauer, 198 F.Supp. 753 (D.D.C.1961).

23. Morgan v. Devine, supra note 3, from which Prince v. United States, supra notes 10 and 12, may be distinguished on the basis of the Court's statement in the latter that "we are dealing with a unique statute of limited purpose and an inconclusive legislative history. It can and should be differentiated from similar problems in this general field raised under other statutes. The question of interpretation is a narrow one, and our decision should be correspondingly narrow." 352 U.S. at 325, 77 S.Ct. at 405.

24. As to robbery, see United States v. McNemara, 2 D.C. (2 Cranch) 45, 26 Fed. Cas. p. 1132 (No. 15701) (1812); United States v. Sims, 4 D.C. (4 Cranch) 618, 27 Fed.Cas. p. 1080 (No. 16290) (1835). See also the cases cited infra note 26. As to burglary, see United States v. Dixon, 1 D.C. (1 Cranch) 414, 25 Fed. Cas. p. 872 (No. 14968) (1807); United States v. Johnson, 2 D.C. (2 Cranch) 21, 26 Fed.Cas. p. 625 (No. 15485) (1811); United States v. Bowen, 4 D.C. (4 Cranch) p. 604, 24 Fed.Cas. 1207 (No. 14629) (1835).

arateness was recognized by Congress.[25] Indeed, robbery in this jurisdiction still retains its common law elements modified only to the extent that Congress has enlarged it to encompass stealthy as well as forcible takings.[26] And while the metamorphosis from common law burglary to statutory housebreaking has involved more of a change, the ancient distinction that robbery offends the person and burglary the habitation has hardly been obliterated legislatively even where a robbery inside a dwelling follows closely on the heels of a housebreaking of that dwelling.

In gauging the impact of the housebreaking and robbery statutes upon the question at bar, the significance of relevant historical facts is neither to be lost nor diluted. "Congress is, after all, not a body of laymen unfamiliar with the commonplaces of our law,"[27] nor, for that matter, were those who framed the statutes and submitted them for Congressional consideration. They were a part of a codification of the entire law of the District painstakingly prepared by the judges of this Court and approved by the Bar Association of the District of Columbia, and adopted by Congress without substantial change.[28] Certainly here, equally as well as in other contexts, there can be attributed "to Congress a tacit purpose—in the absence of any inconsistent expression—to maintain a long-established distinction between offenses essentially different; a distinction whose practical importance in the criminal law is not easily overestimated."[29] And the legislative history of the statutes is devoid of even the slightest hint that Congress intended that the penalties they respectively prescribed should in any set of circumstances be restricted to alternative use.

■ At the heart of the rule of lenity is the consideration that "[w]e should not derive criminal outlawry from some ambiguous implication,"[30] and in the present case all doubt as to the legislative purpose is conspicuously absent. That rule, like other canons of statutory interpretation, "only serves as an aid for resolving an ambiguity; it is not to be used to beget one,"[31] and "comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers."[32] What is involved here is a common instance of two different statutes defining two separate and unrelated offenses, each possessing its distinctive elements and enjoying its own lengthy

25. D.C.Rev.Stat. § 1154 (1875).

26. See United States v. Parker, 35 Wash. L.Rep. 6 (1906); Neufield v. United States, 73 App.D.C. 174, 118 F.2d 375, 389–390 (1941), cert. denied sub. nom. Reuben v. United States, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199 (1942); Byrd v. United States, 118 U.S.App.D.C. 360, 361–362, 342 F.2d 939, 940–941 (1965).

27. Callanan v. United States, supra note 4, 364 U.S. at 594, 81 S.Ct. at 325.

28. See 34 Cong.Rec. 3585–3586 (1901). See generally 1 D.C.Code Annotated IX–XIV (1961).

29. United States v. Rabinowich, 238 U.S. 78, 88, 35 S.Ct. 682, 685, 59 L.Ed. 1211 (1915), quoted in Callanan v. United States, supra note 4, 364 U.S. at 594, 81 S.Ct. 321, 5 L.Ed.2d 312.

30. United States v. Universal C.I.T. Credit Corp., supra note 9, 344 U.S. at 222, 73 S.Ct. at 229.

31. Callanan v. United States, supra note 4, 364 U.S. at 596, 81 S.Ct. at 326.

32. Ibid.

history and understanding of independence as a crime.[33] The policy of lenity has no room for operation in this case, and the motion must be denied.[34]

---

**33.** Compare Callanan v. United States, supra note 4, where the Court, in holding that the doctrine of lenity did not apply to convictions of conspiring to obstruct commerce by extorting money and the substantive offense of obstructing commerce by extortion, both of which were made punishable by the Hobbs Anti-Racketeering Act, distinguished decisions applying the doctrine by pointing out that "[t]his is an ordinary case of a defendant convicted of violating two separate provisions of a statute, whereby Congress defined two historically distinctive crimes composed of differing components." 364 U.S. at 597, 81 S.Ct. at 327. See also the cases cited supra notes 20 to 22.

**34.** This opinion incorporates the Court's findings of fact and its legal conclusions thereon.