**UNITED STATES of America**

v.

**Thomas B. DIXON, Appellant.**

**UNITED STATES of America**

v.

**Reginald T. SMITH, Appellant.**

**Nos. 71–1123, 71–1124.**

United States Court of Appeals,
District of Columbia Circuit.

Argued June 13, 1972.

Decided Oct. 25, 1972.

Mr. Cullen B. Jones, Jr., Washington, D .C. (appointed by this Court), for appellants.

Miss Ruth R. Banks, Asst. U. S. Atty., with whom Messrs. Harold H. Titus, Jr., U. S. Atty., John A. Terry, and John F. Evans, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, ROBINSON, Circuit Judge, and JAMESON,* Senior United States District Judge for the District of Montana.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This is an appeal from convictions, following a jury trial, of each appellant on one count of armed robbery,[1] one count of assault with a dangerous weapon,[2] and one count of carrying a dangerous weapon.[3] The prosecution stemmed from an incident which occurred on a May afternoon when the complainant, Arthur R. Cloey, was returning from a bank to his place of employment with a brown envelope containing $500 cash in his pocket. As he approached the Government Printing Office warehouse on North Capitol Street, two men, later identified as appellants, approached Cloey, positioned themselves on either side and crowded against him. One of the two said, "Let me have it," and the one subsequently identified as appellant Smith stuck an automatic pistol in Cloey's side.

Cloey continued walking until he saw a stranger, to whom he attempted to toss the envelope containing the money. At that point appellant Dixon broke away from Cloey and knocked the stranger down before he could catch the envelope. Dixon then picked up the envelope and ran, and was joined by Smith. Cloey gave chase, accompanied by a Mr. O'Bryant, an employee of the Government Printing Office. Cloey ultimately abandoned the chase but O'Bryant continued to pursue the two men into the basement of Union Station, where he told Guard Eugene R. Coffman to watch out for them. Coffman left O'Bryant and apprehended Smith, and then, in another part of the basement, apprehended Dixon. The pistol and empty brown envelope were found in the room with Dixon; the money was not recovered. Cloey positively identified Smith at the scene of the arrest some 45 minutes after the crime, and identified Dixon at trial.

Witness O'Bryant did not testify at trial because he could not be located. Officer Richard L. Jenks of the Metropolitan Police Department testified that he had contacted the Government Printing Office and was informed that O'Bryant was on sick leave; and that a

---

* Sitting by designation pursuant to Title 28, U.S.C. section 294(d).

1. D.C.Code §§ 22–2901, 22–3202 (Supp. V 1972).

2. D.C.Code § 22–502 (1967).

3. D.C.Code § 22–3204 (1967).

check of the witness' residence by Officer Jenks revealed that O'Bryant had moved and left no forwarding address. At trial, neither appellant testified and there were no defense witnesses. Appellants received identical concurrent sentences for armed robbery, assault with a dangerous weapon and carrying a dangerous weapon.

■ Three contentions advanced in appellants' brief merit little or no discussion.[4] Instead, on this appeal, we are chiefly concerned with an issue which we raised *sua sponte* at oral argument and on which both sides have submitted post-argument momoranda. The question, simply stated, is whether Dixon's act of picking up the envelope which Cloey attempted to throw to a stranger constituted a taking "from [Cloey's] person or immediate actual possession" within the meaning of the robbery statute.[5] We are of the view that it did.

In its common law concept, forcible robbery was essentially a species of aggravated larceny.[6] Both offenses involved a felonious taking and carrying away of another's personalty of value without consent but with intent to steal.[7] To common law robbery was superimposed, however, the twofold element of a taking from the person or immediate presence by violence or putting

4. The trial court's denial of appellants' request for a missing witness instruction as to O'Bryant was clearly proper in light of the Government's good faith but unsuccessful effort to locate him. Stewart v. United States, 135 U.S.App.D.C. 274, 279, 418 F.2d 1110, 1115 (1969); Wynn v. United States, 130 U.S.App.D.C. 60, 64, 397 F.2d 621, 625 (1967).

The court also correctly refused to let appellants argue that the bystander might have removed the $500 from the envelope before appellant Dixon picked it up. There was no evidence whatever before the jury on which such an inference could rationally have been based. See Johnson v. United States, 121 U.S.App. D.C. 19, 21, 347 F.2d 803, 805 (1965). Cf. Hunt v. United States, 115 U.S. App.D.C. 1, 316 F.2d 652 (1963).

Finally, we find no prejudicial error in the trial judge's comment to the jury that "[i]f there is any believable evidence in this case, it is to the effect that it [the pistol] was carried outside of [appellants'] home or place of business." While it may be the better part of wisdom not to do so, it is well-settled that a trial judge may comment on the evidence while instructing the jury so long as the ultimate resolution of factual issues is clearly left to the jury. Jones v. United States, 124 U.S.App.D.C. 83, 86, 361 F.2d 537, 540 (1966); Roberts v. United States, 109 U.S.App.D.C. 75, 77, 284 F.2d 209, 211 (1960). Where, as here, the comment is sustained by uncontradicted evidence, and the judge explicitly charged that all matters of fact were to be determined by the jury, no harm to appellants could result. Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). Moreover, appellants failed to raise any objection to the comment at the time it was made, as required by Fed.R.Crim.P. 30, and thus aborted the opportunity for any further emphasis on the jury's role which appellants might have desired. See Villaroman v. United States, 87 U.S. App.D.C. 240, 241, 184 F.2d 261, 262 (1950).

5. D.C.Code § 22–2901 (Supp. V 1972) states:

Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery. . . .

If indeed, the evidence did not warrant a finding that the taking was from Cloey's person or immediate actual possession, then the jury could only have properly found appellants guilty of the lesser included offense of grand larceny. D.C.Code § 22–2201 (1967). The maximum penalty for grand larceny is ten years imprisonment; for robbery fifteen years. D.C.Code § 22–2201 (1967), § 22–2901 (Supp. V 1972).

6. Edwards v. United States, 78 U.S.App. D.C. 226, 229, 139 F.2d 365, 368 (1943), cert. denied, 321 U.S. 769, 64 S.Ct. 523, 88 L.Ed. 1064 (1944); Lamore v. United States, 78 U.S.App.D.C. 12, 136 F.2d 766 (1943).

7. See Turner v. United States, 57 App. D.C. 39, 40, 16 F.2d 535, 536 (1926).

in fear.[8] With us, these characteristics of forcible robbery survive today.

■ Until 1901, robbery was a part of the general law of the District of Columbia in its character as a common law crime.[9] In that year, the statute defining the offense as it now substantively appears was enacted.[10] To be sure, the offense has since embraced takings "by . . . sudden or stealthy seizure or snatching" as well as those "by force or violence." [11] But "robbery in this jurisdiction still retains its common law elements modified only to the extent that Congress has enlarged it to encompass stealthy as well as forcible takings." [12] So also, while larceny remains an offense against the possession,[13] robbery is basically a crime against the person.[14]

■ Viewed against this historical backdrop, it becomes the more apparent that the episode for which appellants were convicted was a robbery rather than a larceny. It is plain enough that Cloey's attempt to throw the envelope to a bystander was a resistive response to the threat posed by the gun Smith held against his ribs—an effort to transfer the envelope to a safer place than his pocket. It is equally plain that but for the deadly force displayed by appellants, Cloey would not have rid himself of the envelope. It might be argued persuasively that this involuntary separation of property and custodian,[15] followed by Smith's immediate appropriation and asportation of the envelope and the money inside, was a taking from the "person" within the contemplation of the robbery statute.

But whether it was or not, we think the taking was from Cloey's "immediate actual possession" as that phrase is used in the statute. In Spencer v. United States,[16] we affirmed a robbery conviction on evidence establishing that money was removed from the pocket of the victim's trousers draped on a chair at the foot of a bed he then occupied.[17] We

---

8. See cases cited *supra* notes 6–7.

9. Irby v. United States, 250 F.Supp. 983, 987–988 (D.D.C.1965), aff'd, 129 U.S. App.D.C. 17, 390 F.2d 432 (1967). *See also* United States v. McNemara, 2 D.C. (2 Cranch) 45, 26 F.Cas. p. 1132 (No. 15,701) (1812); United States v. Sims, 4 D.C. (4 Cranch) 618, 27 F.Cas. p. 1080 (No. 16,290) (1835).

10. Act of March 3, 1901, 31 Stat. 1322, ch. 854, § 810. *See also* Neufield v. United States, 73 App.D.C. 174, 177, 188–189, 118 F.2d 375, 378, 389–390 (1941).

11. See note 5, *supra*. This, of course, changed the common law rule. Turner v. United States, *supra* note 7, 57 App.D.C. at 40, 16 F.2d at 536.

12. Irby v. United States, *supra* note 9, 250 F.Supp. at 988. *See also* United States v. Parker, 35 Wash.L.Rep. 6 (1906); Neufield v. United States, *supra* note 10, 73 App.D.C. at 188–189, 118 F.2d at 389–390; Byrd v. United States, 119 U.S.App.D.C. 360, 361–362, 342 F.2d 939, 940–941 (1965).

13. Neufield v. United States, *supra* note 10, 73 App.D.C. at 187, 118 F.2d at 388.

14. *Id.*; Irby v. United States, *supra* note 9, 250 F.Supp. at 988.

15. While the money in the envelope belonged, not to Cloey, but rather to his employer, "possession" as used in the robbery statute does not mean strict legal ownership, but rather "custody or control" in a colloquial sense. United States v. Spears, 145 U.S.App.D.C. 284, 293, 449 F.2d 946, 955 (1971); Neufield v. United States, *supra* note 10, 73 App. D.C. at 187, 118 F.2d at 388. Thus in *Spears* we held that where money was taken from individual clerks in a post office rather than from the foreman, it was removed from the foreman's immediate actual possession since as foreman he had charge of the money, had authority to supervise its custodians—the clerks—and could reasonably be expected to exercise some physical control over the clerks' windows. Moreover, the robbery was accomplished by force directed at the foreman personally. Similarly, in *Neufield* we held that money taken from a teller in a bank was robbery of the teller since as such he had custody and control of the money which the bank had entrusted to him.

16. 73 App.D.C. 98, 116 F.2d 801 (1940).

17. *Id.* at 98–99, 116 F.2d at 801–802.

approved the trial judge's instruction to the jury "that 'immediate actual possession meant that the thing taken may be on the person, or within reach of the person, so long as it is considered to be in such possession that if the complainant knew that his property was being removed from his clothes such knowledge would likely result in physical violence or a struggle for possession of the property.' "[18] We added that "immediate actual possession" "must mean at last an area within which the victim could reasonably be expected to exercise some physical control over his property."[19] Since "the taking was within a very few feet of the victim, in the same room, and where, had he known of it, he could have made effective efforts to retain his property,"[20] we held that "[t]his complies fully with the terms of the statute."[21]

As *Spencer* makes clear, a thing is within one's "immediate actual possession" so long as it is within such range that he could, if not deterred by violence or fear, retain actual physical control over it. That construction is harmonious with holdings elsewhere that the invasion of personal possession essential to robbery sufficiently appears where the property is so far under the personal protection of the victim that violence or intimidation is necessary to sever his control.[22] When Smith grabbed the envelope tossed by Cloey, it was still within such proximity to Cloey that, but for his armed assailants, he could have retrieved it. That, in our view, was enough, and the convictions under review are accordingly

Affirmed.

18. *Id.* at 99, 116 F.2d at 802.

19. *Id.*

20. *Id.*

21. *Id.*

22. *See* State v. Campbell, 2 Terry (Del.) 342, 22 A.2d 390, 392 (1941); Groce v. State, 250 Ind. 582, 236 N.E.2d 597, 599 (1968); Commonwealth v. Homer, 235 Mass. 526, 127 N.E. 517, 520 (1920); People v. Moore, 13 Mich.App. 320, 164

N.W.2d 423, 425 (1969); State v. Carcerano, 238 Or. 208, 390 P.2d 923, 930 (1964), cert. denied, 380 U.S. 923, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965); Rayford v. State, 423 S.W.2d 300, 302 (Tex.Cr.App.1968); State v. Deso, 110 Vt. 1, 1 A.2d 710, 712 (1938); State v. McDonald, 74 Wash.2d 141, 443 P.2d 651, 653 (1968). Each of these decisions dealt with robbery either as a common law offense or as a crime under a statute not significantly different from ours.