**UNITED STATES of America, Appellee,**

v.

**W.T.T. (a juvenile), Appellant.**

**No. 85–5314.**

United States Court of Appeals, Eighth Circuit.

Submitted June 27, 1986.*

Decided Sept. 11, 1986.

Debra D. Watson, Rapid City, S.D., for appellant.

Reed Rasmussen, Asst. U.S. Atty., Rapid City, S.D., for appellee.

Before ARNOLD and FAGG, Circuit Judges, and OLIVER,** Senior District Judge.

ARNOLD, Circuit Judge.

Defendant W.T.T., a juvenile, appeals from a judgment of the District Court for the District of South Dakota[1] declaring him a juvenile delinquent. The District Court found that W.T.T. had committed three offenses: simple assault, a violation of 18 U.S.C. § 113(e) (Count I); assault by striking, beating, and wounding, a violation of 18 U.S.C. § 113(d) (Count II); and robbery, a violation of 18 U.S.C. § 2111 (Count III).[2] The defendant was committed to the

* This case was argued on February 12, 1986. It was submitted to the panel for decision on June 27, 1986, when the Court received the last item of information requested after argument.

** The Hon. John W. Oliver, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Hon. Donald J. Porter, Chief Judge, United States District Court for the District of South Dakota.

2. These statutes are made applicable to the defendant by 18 U.S.C. § 1153, which provides that any Indian who commits any of several specified offenses (including those charged here) within Indian country shall be subject to the same laws that govern all other persons committing such offenses within the exclusive jurisdiction of the United States. The parties have stipulated that the defendant is an Indian and that the events in question occurred in Indian country.

In the case of Counts I and II, the District Court's findings were of offenses lesser than but included within the charges contained in the amended information. Count I charged assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. § 113(c), and Count II charged assault resulting in seri-

custody of the Attorney General or his authorized representative for the period of his minority. See 18 U.S.C. § 5037. On appeal, the defendant argues that the government presented insufficient evidence to support a finding of guilt on any count. We disagree, and affirm as to all three counts.

## I.

The charges against W.T.T. stem from a violent confrontation between two groups of people that occurred August 18, 1984 on the Pine Ridge Indian Reservation in South Dakota. Very early that morning, a pickup carrying Clifford Grass, Rose Cottier, Lori Ann Cottier, and three others became stuck in the mud on a dirt road near Porcupine, South Dakota. Some time later, two cars carrying W.T.T. and ten others arrived on the scene. Shortly after the cars arrived, a series of fights erupted between the pickup occupants and the car occupants.

Almost everyone present had been drinking heavily, and, not surprisingly, accounts of the incident given by different witnesses at trial varied substantially. However, prosecution witness Lori Ann Cottier testified that she had not been drinking, and her testimony on this point was corroborated by other witnesses. The District Court found her testimony particularly credible, and relied principally on it in making findings of fact. Tr. 172.

Lori Ann testified that while Clifford Grass was jacking up the pickup, W.T.T. came up behind Grass and hit him, knocking him to the ground. Tr. 109. Lori Ann continued that when Clifford stood back up, he was knocked down again, and W.T.T. and several others began hitting him. Tr. 110–111. Other fights began to break out throughout the crowd. Tr. 110–112. Grass's girlfriend, Rose Cottier, was beset by three assailants; Grass moved to protect her, lying on top of her and proclaiming that she was pregnant. Tr. 112.

W.T.T. and others began beating Grass again, using their fists and clubs. Tr. 112–113. Grass tried to escape several times by getting into the pickup, but each time W.T.T. and the others pulled him out and continued beating him. Tr. 114–115.

Lori Ann further testified that she saw one of Grass's attackers, whom she later identified as W.T.T., with a knife. Tr. 115–116. She stated that she saw W.T.T. use the knife on Grass when Grass was trying to get in the pickup. Tr. 116–117. Dr. Robert Israel, who examined Grass later that day, testified that Grass had a wound on the rear of his shoulder that could have been made by a knife, as well as a number of other injuries. Tr. 72.

Finally, Lori Ann testified that after the stabbing, W.T.T. and the other assailants got in the back of the pickup and began taking things; she saw W.T.T. take a toolbox, while the others took a jack and some groceries. Tr. 118–119, 133–134. Grass took this opportunity to crawl through the pickup and over to Rose Cottier, lying beside her on the ground. Tr. 134. Unable to run, Grass and Rose Cottier moved to the other side of a barbed-wire fence near the road. Tr. 119. At this point, Lori Ann and another of the pickup's occupants ran from the scene and went to call the police. *Id.*

## II.

As in a criminal case against an adult, the government's burden in a juvenile case is to prove all elements of the offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 1074, 25 L.Ed.2d 368 (1970). The standard by which the sufficiency of the evidence is reviewed on appeal is "whether a reasonable factfinder could have found that the evidence, viewed in the light most favorable to the government, established the defendant's guilt beyond a reasonable

ous bodily injury, in violation of 18 U.S.C. § 113(f). As noted in text, the actual findings were of simple assault and assault by striking, beating, and wounding. We observe, in addition, that W.T.T. has not been convicted of or

sentenced for a crime. Rather, he has been adjudged a juvenile delinquent because he has committed acts that would be crimes if committed by an adult. See *Fagerstrom v. United States*, 311 F.2d 717, 720 (8th Cir.1963).

doubt." *United States v. De Leon,* 768 F.2d 629, 631 (5th Cir.1985); see *United States v. GJH,* 681 F.2d 527 (8th Cir.1982).

We think this standard is clearly met in the present case. The defendant's arguments to the contrary are based largely upon the fact that various witnesses gave inconsistent and contradictory versions of the confrontation and W.T.T.'s behavior. However, we conclude that a factfinder could very reasonably have sifted through the evidence and determined, as the District Court did, that Lori Ann Cottier's testimony was credible and that, based on her testimony, W.T.T. was guilty of the offenses for which he was adjudged a juvenile delinquent. Lori Ann's testimony as to W.T.T.'s participation in the beating of Grass, and as to his use of the knife on Grass, provide ample support for the conclusion that W.T.T. committed simple assault, 18 U.S.C. § 113(e), and assault by striking, beating, and wounding, 18 U.S.C. § 113(d).

The District Court's determination that the defendant committed robbery, 18 U.S.C. § 2111, is also supported by Lori Ann's testimony. Robbery, under § 2111, is the taking of anything of value from the person or presence of another by force and violence or by intimidation. "[P]roperty is in the presence of a person if it is so within his reach, inspection, observation or control, that he could if not overcome by violence or prevented by fear, retain his possession of it." *United States v. Burns,* 701 F.2d 840, 843 (9th Cir.), *cert. denied,* 462 U.S. 1137, 103 S.Ct. 3123, 77 L.Ed.2d 1375 (1983). Lori Ann's testimony was that Grass and Rose Cottier had been beaten, that W.T.T. took the toolbox from their truck, and that when he did so Rose Cottier was on the ground beside the truck and Grass was either crawling through the cab of the truck or collapsed on the ground beside Rose Cottier. Thus, her testimony

establishes all the elements of a violation of 18 U.S.C. § 2111.

### III.

We conclude that the government adduced sufficient evidence to support findings that W.T.T. committed the offenses upon which the District Court based its adjudication of juvenile delinquency. Accordingly, the judgment of the District Court is

Affirmed.

OLIVER, Senior District Judge, concurring in part and dissenting in part.

I agree that the district court's adjudications of juvenile delinquency should be affirmed in regard to Count I and Count II. I respectfully dissent from the majority's affirmance in regard to Count III.[1]

### I.

I agree with the majority's statement that "[r]obbery, under § 2111, is the taking of anything of value from the person or presence of another by force and violence or by intimidation." At 782. The crime of robbery, as the majority correctly paraphrased Section 2111, is directed against the taking of property from a particular person or in the presence of another particular person by force and violence, or by intimidation. *See* at 782. Three essential elements must be proven beyond reasonable doubt in order to establish a violation of Section 2111: *First:* The act or acts of taking, from the person or presence of another, anything of value; *Second:* The act or acts of taking such property or money by force or violence, or by means of intimidation; and *Third:* Doing such act or acts willfully. *See* 2 Devitt & Blackmar, *Federal Practice and Jury Instructions,* § 44.03 (3d ed. 1977).[2]

The question of when a defendant may have employed force, violence or intimi-

---

1. The sufficiency of the evidence question presented in regard to Count III is important for the reason the district court, acting pursuant to 18 U.S.C. § 5037, committed the juvenile to custody until he becomes twenty-one years old. A sentence of that length could not be imposed under either of the adjudications made under Count I or Count II.

2. 67 Am.Jur.2d, Robbery § 14, p. 65, states that the "general rule is that it is essential, to constitute robbery, that the property in question be

dation in order to take property from or in the presence of a particularly named person or persons is a factual question that must, in my view, be supported by the evidence in a particular case. *Norris v. United States,* 152 F.2d 808 (5th Cir.1946), *cert. denied,* 328 U.S. 850, 66 S.Ct. 1118, 90 L.Ed. 1623 (1946),[3] makes clear that the common law crime of robbery and the various federal statutory offenses of robbery have substantially the same essential elements. Most significantly, for purposes of this case, *Norris* added that the "violence or putting in fear must be *at the time of the act or immediately preceding it.*" (Emphasis added). *Id.* at 809.

I turn now to how I believe the principles stated should be applied to the factual circumstances of this case.

## II.

Count III alleged that the defendant "became a juvenile delinquent in that he did willfully and unlawfully by force and violence and by intimidation, take from the person and presence of Mary Marcella Cottier, Rose Marie Cottier and Clifford Allen Grass, things of value, that is, a towing chain, handyman jack, toolbox with tools and assorted grocery items, property of Bert Cottier, Mary Marcella Cottier and Rose Marie Cottier, in violation of 18 U.S.C. §§ 1153 and 2111."

taken from the person of another, or from his possession in his presence, a characteristic distinguishing robbery from larceny." That work also states that to support "a charge of robbery, the taking of the property must be achieved by force or violence, or by putting the victim in fear. The force or intimidation employed is the essence of the offense." *Id.* § 22, pp. 76–77. And, in its specific discussion of "actual force or violence," it is stated that "the force or violence element essential to robbery was lacking where the defendant allegedly scattered the contents of the victim's purse on the sidewalk and took money and keys while the victim was fighting with another individual and where there was no evidence that the defendant participated with the other individual in a common scheme or plan to batter victim." *Id.* § 23, p. 78.

3. *Norris* was cited with approval by the Eighth Circuit in *Bradley v. United States,* 447 F.2d 264, 274 n. 19 (8th Cir.1971), *vacated on other*

The district court made an express finding that "the tool box, ... was taken by the Defendant willfully and unlawfully and by force and violence and by intimidation from the presence of the persons in the pickup, including Marcella Cottier, Rose Marie Cottier and Clifford Allen Grass...." (Tr. 178). I agree with the majority's statement that the district court found Lori Ann Cottier's testimony to be "particularly credible" for the reason that it found that she was the only witness that had not been drinking and that it "relied principally on [her testimony] in making [its] findings of fact." At 781.

I do not, however, agree with the majority's conclusion that Lori Ann's "testimony establishes all the elements of a violation of 18 U.S.C. § 2111." At 782. It is my view that the government failed to adduce sufficient evidence to support any findings of fact that at the time W.T.T. took the toolbox, he did so (1) "by force and violence, or by intimidation," or (2) "from the person or presence of another," both of which are essential elements of a Section 2111 robbery offense.[4]

## III.

## A.

It is to be noted as a preliminary matter that the district court did not make a lesser

*grounds,* 404 U.S. 567, 92 S.Ct. 746, 30 L.Ed.2d 722 (1972).

4. Although Count III of the amended information alleged that the defendant took "a towing chain, handyman jack, toolbox with tools and assorted grocery items," inquiry is necessarily narrowed to the toolbox. For that was the only property the district court found that W.T.T. took from the pickup. Indeed, Lori Ann testified that Tim Brewer "took the handyman jack" and that she saw "Moon take some of the groceries." (Tr. 118–19). There was no testimony that anyone took the "towing chain." The district court expressly stated that "I don't feel at all inclined to make any finding against the defendant based on the groceries." (Tr. 176).

It is thus clear that the only evidence that the district court considered to be credible established that persons other than the defendant took three of the four items that the defendant was charged with taking.

included offense finding of larceny in regard to Count III in the manner that it made lesser included offense findings in regard to Counts I and II.[5] In regard to both Count I and Count II, the district court concluded that the evidence did not support a finding that W.T.T. had assaulted Grass "with a deadly weapon" or that W.T.T.'s alleged assault resulted "in serious bodily injury." The district court recognized, of course, that Lori Ann had testified that the defendant had a knife in his hand at some time during the general melee.

It concluded, however, that the defendant could be found guilty only of the lesser included offenses in regard to both Count I and Count II. The district court appropriately explained that "it is one thing to find that the Defendant had a knife in his possession, but it is yet another thing to find that he actually stabbed Mr. Grass." (Tr. 175).[6]

The fact that the record may contain sufficient evidence to support a finding that W.T.T. committed the lesser offense of larceny, as I believe it does, does not answer the question of whether the record contains sufficient evidence to support the district court's finding that at the time the defendant took the toolbox, he did so "by force and violence and by intimidation from the presence of the persons in the pickup." (Tr. 178). I do not believe that the evidence

adduced was sufficient to support such a finding.

## B.

In spite of the substantial variance in the testimony of the drunken witnesses, excepting only Lori Ann, it is reasonably clear that Grass was not "in the pickup" (as the district court found) at the time the toolbox was taken.[7]

The majority does not cite any page of the transcript to support the statement made in its discussion of Count III that "*[when]* ... *W.T.T. took the toolbox* ... Grass was either crawling through the cab of the truck or collapsed on the ground beside Rose Cottier.*" At 782. (Emphasis added). I find nothing in the record to support such a statement. Certainly the district court did not make any finding of fact in that regard. The only testimony I find in the transcript about Grass crawling through the cab was that given by Lori Ann when she testified in response to the district court's questions that after Grass had been stabbed by someone "he crawled out of the pickup and he crawled over to my Mom, Rose. He crawled over to her and he laid there...." (Tr. 134).

The only testimony Lori Ann gave in regard to the time when the toolbox may have been taken was given in connection with her testimony in regard to when she

---

**5.** Certainly the district court could have done so. For, as stated in *United States v. Belt*, 516 F.2d 873, 875 (8th Cir.1975), " '[i]t is beyond dispute that larceny is a necessarily a lesser included offense of the crime of robbery.' " The offense of larceny is included in 18 U.S.C. § 1153.

**6.** The record, as I read it, does not support the implication in the majority opinion that the district court's Count I and Count II lesser offense findings were based on its acceptance of Lori Ann's testimony that "she saw W.T.T. use the knife on Grass," at 781, and her testimony "as to his use of the knife on Grass." *Id.* at 782. The district court's Count I and Count II lesser offense findings obviated the necessity of its making any finding in regard to the sharply disputed factual question of whether Grass had, in fact, been stabbed or whether he received his wound when he crawled under a barbed wire fence. Indeed, the majority recognized that Dr.

Israel refused to express an opinion that Grass' wound was, in fact, a stab wound. At 781–82.

I believe that it is obvious that if the district court had, in fact, accepted Lori Ann's testimony in regard to W.T.T.'s "use of the knife on Grass," it would have found that the defendant had committed the aggravated offenses charged in Count I and Count II rather than finding that he only committed the lesser included offenses in regard to both those counts.

**7.** The majority accurately stated in its discussion of Count I and Count II that "Grass was jacking up the pickup" when he was first assaulted, citing Tr. 109; that after Rose Cottier got out of the pickup and was thereafter knocked to the ground in a separate fight of her own, "Grass moved to protect her, lying on top of her," citing Tr. 112; and that Grass thereafter unsuccessfully tried to get back "into the pickup," citing Tr. 114–115. At 781.

left the scene to call the police. She testified that:

A. ... my Mom was, she was laying on the ground and she was crying. [Grass] laid down beside my Mom [and] was trying to make my Mom get up and run [and] he pulled her across that fence ... So I started running and we went to call the cops.

Q. Before you left, had the items been removed from the pickup, the groceries and everything else?

A. Yes.

(Tr. 119).

Lori Ann's affirmative answer to the government's leading question, in my view, simply supports an implicit finding of fact that the toolbox was taken at some unidentified time before Lori Ann left to call the police. Her testimony does not, in my view, support a finding of fact that at the time the toolbox was taken, it was taken "from the presence of the persons in the pickup," as the district court found.

For there is no question that Rose Cottier was not "in the pickup."[8] Nor was there any evidence where Marcella Cottier may have been at any time. Certainly no one testified that she was, in fact, in the pickup. And there was no evidence that Grass was crawling through the cab at the time the toolbox was taken. For the time the toolbox was taken was never established by anyone's testimony.

### C.

Nor do I believe that Lori Ann's testimony can be said to support a finding of fact that at the time the defendant took the toolbox, he did so "by force and violence and by intimidation" as alleged in Count III.[9] Lori Ann did not testify that anyone was in the pickup when the toolbox was taken. Nor did she testify that the defendant had a knife in his hand at the time he took the toolbox or that he at any time brandished the knife in the presence of the particular persons named in Count III when the toolbox was taken.

Neither Lori Ann nor any other witness testified that Mary Marcella Cottier, Rose Marie Cottier or Clifford Allen Grass, the particular persons named in Count III, were, in fact, intimidated by the defendant when he took the toolbox or that the defendant, in fact, took the toolbox from the person and presence of those persons by force and violence.

So far as the record is concerned, W.T.T., in the confusion and chaos of the general melee, could have simply lifted the toolbox out of the pickup without directing any force, violence, or intimidation toward anyone. The fact Grass and Rose Cottier were beaten during the course of that general melee does not, in my view, establish that W.T.T. beat them in order to be able to take the toolbox from the pickup truck.

I cannot believe that Congress intended that a person should be convicted of a violation of Section 2111 and subjected to a fifteen-year sentence unless the government establishes beyond reasonable doubt that the taking of the property was, in fact, accomplished by force and violence or by intimidation.

### IV.

I do not believe that the majority's partial quotation of a sentence, at 782, from the Ninth Circuit's per curiam opinion in *United States v. Burns,* 701 F.2d 840, 843, (9th Cir.) (per curiam), *cert. denied,* 462 U.S. 1137, 103 S.Ct. 3123, 77 L.Ed.2d 1375

---

**8.** Lori Ann testified that at the time Clifford Allen Grass was being knocked to the ground, "Carol and Ollie ... was calling on my Mom, Rose Cottier, to get out [of the pickup truck] and fight them." (Tr. 110). She further testified that her mother accepted that challenge and that thereafter "Ollie and [my] mother and Carol Tuttle were fighting at the same time this thing was going on with Clifford." (Tr. 111).

**9.** In regard to that separate essential element of a Section 2111 robbery offense, the majority simply noted Lori Ann's testimony that "Grass and Rose Cottier had been beaten" and concluded that, thus, "her testimony establishes all the elements of a violation of 18 U.S.C. § 2111." At 782.

(1983), supports its conclusion that the district court must have implicitly made a Count III finding that the persons in the pickup failed to retain possession of the toolbox because they had been, in fact, "overcome by violence or prevented by fear" from doing so. At 782.[10] For I believe the factual circumstances presented in that case are clearly distinguishable from those presented in this case.

*Burns* involved two almost simultaneous robberies in Indian country. The first involved the robbery of a smoke shop; the second robbery "also occurred in the smoke shop, in the midst of the first robbery." *Id.* at 841. *Burns* described the second robbery as follows: "Burns approached the victim, Fillmore and, at gunpoint, demanded the keys to Fillmore's car. After Fillmore told Burns that the keys were in the car, Burns left the shop and stole the keys and the car." *Id.*

Certainly under those factual circumstances, I believe it obvious that there was sufficient evidence to support the instruction given in *Burns* under which the jury could find, as it did, that Fillmore's car was taken by force and violence or by intimidation within the meaning of Section 2111. There can be little doubt that the jury determined under the district court's instruction that Fillmore, in fact, feared that he would be shot if he followed the defendant out of the smoke shop and attempted to keep the defendant from taking his car.[11]

The *Burns* court was primarily concerned with whether it was required to follow the earlier Ninth Circuit per curiam opinion in *United States v. Culbert*, 548 F.2d 1355 (9th Cir.1977) (per curiam), *rev'd on other grounds*, 435 U.S. 371, 98 S.Ct. 1112, 55 L.Ed.2d 349 (1978), the reasoning of which *Burns* recognized had been consistently rejected by other circuits, citing *United States v. Alessandrello*, 637 F.2d 131, 144–45 (3d Cir.), *cert. denied*, 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1980); *United States v. Hackett*, 623 F.2d 343, 345

**10.** The sentence from which the majority partially quoted related to an instruction given by the district court. In regard to the instruction given, *Burns* concluded that it "was a correct statement of the law *under the circumstances presented here*" for the trial court to have "instructed the jury that property is in the presence of a person if it is 'so within his reach, inspection, observation or control, that he could if not overcome by violence or prevented by fear, retain his possession of it.'" 701 F.2d at 843. (Emphasis added).

The government primarily cited *Burns* to support its argument that "[t]here is no requirement in a robbery case that the Government call the actual owner of the property to testify that he did not give the Defendant permission to take his property. The statute does not require that the taking be directly from the owner of the property." Appellee's Brief at 10. I do not believe that the district court's failure to find that the "towing chain, handyman jack, toolbox with tools and assorted grocery items" were, in fact, "the property of Bert Cottier," as alleged in the amended information, was in any way fatal.

I, of course, disagree with the government's secondary argument that the circumstances presented in *Burns* "is exactly the situation present in the case at bar," *id.* at 785, for the reasons stated in the text.

**11.** The principles applied to the facts in *Burns* were applied in *United States v. Dixon*, 469 F.2d 940 (D.C.Cir.1972). In that case Dixon and his co-defendant Smith positioned themselves on either side of one Cloey, knowing that Cloey had an envelope containing $500 in cash in his pocket. Smith stuck a pistol in Cloey's side and said "Let me have it." Cloey attempted to toss the envelope to a stranger. Dixon knocked the stranger down before he could catch the envelope; the envelope fell on the sidewalk; Dixon picked it up and ran.

The Court of Appeals raised the following question *sua sponte* at oral argument, "whether Dixon's act of picking up the envelope which Cloey attempted to throw to a stranger constituted a taking 'from [Cloey's] person or immediate actual possession' within the meaning of the robbery statute." *Id.* at 942. It answered in the affirmative concluding that "the episode for which appellants were convicted was a robbery rather than a larceny" for the reason that it was "plain that but for the deadly force displayed by appellants, Cloey would not have rid himself of the envelope." *Id.* at 943.

An entirely different case would have been presented if the envelope had sailed out of sight through the cracks of a grating covering a below surface window well and was not retrieved by either Smith, Dixon, or Cloey. If some person, unassociated with Smith and Dixon, later retrieved the envelope from the window well by putting a piece of chewing gum on a stick, such a person would be guilty of larceny rather than robbery even if Cloey had been beaten as well as intimidated by Smith and Dixon.

(4th Cir.), *cert. denied,* 449 U.S. 902, 101 S.Ct. 273, 66 L.Ed.2d 132 (1980).[12]

I have no quarrel with *Burns;* that case, in my view, is clearly distinguishable on its facts from this case. The record in this case, as I read it, does not contain any evidence to support a finding that at the time W.T.T. took the toolbox, he did so either by force, violence, or by intimidation from the person or in the presence of either Marcella Cottier, Rose Marie Cottier or Clifford Allen Grass, the three persons named in Count III, or, indeed, from any other person.

There was, in my view, sufficient evidence that may have supported a lesser offense finding of larceny. W.T.T., however, was not charged with larceny; nor did the district court make such a finding in regard to Count III. The district court's Count III robbery finding should, in my view, be reversed.

### V.

For the reasons stated, I would affirm the district court's adjudication of juvenile delinquency made in connection with Count I and Count II and reverse the adjudication made in regard to Count III. Under principles stated in *Scruggs v. United States,* 450 F.2d 359, 364 (8th Cir.1971), in which the defendant was improperly sentenced under Section 2113(d), I would also vacate the sentence imposed by the district court and remand the case for imposition of a new sentence to be based solely on the district court's findings as made in Count I and Count II.

**12.** It is interesting to note that the Eighth Circuit had earlier rejected the reasoning upon which *Culbert* was based in *Brinkley v. United States,* 560 F.2d 871 (8th Cir.) *cert. denied,* 434 U.S. 941, 98 S.Ct. 435, 54 L.Ed.2d 302 (1977). *Culbert* apparently was not cited to the *Brinkley* court.