**William Virgil FAGERSTROM,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17052.**

United States Court of Appeals
Eighth Circuit.

Jan. 15, 1963.

Sidney Lorber, Minneapolis, Minn. (Court appointed) filed typewritten brief for appellant.

Miles W. Lord, U. S. Atty., Minneapolis, Minn., and Patrick J. Foley, Asst. U. S. Atty., Minneapolis, Minn., filed typewritten brief for appellee.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal *in forma pauperis* by William Virgil Fagerstrom from an order of the District Court, dated March 14, 1962, denying his motion, under 28 U.S.C. § 2255, to vacate a judgment entered February 9, 1961, determining that he is a juvenile delinquent within the meaning of the Juvenile Delinquency Act, 18 U.S.C. § 5031 et seq., and committing him to the custody of the Attorney General until he reaches his majority.[1]

Fagerstrom is a juvenile mixed-blood Chippewa Indian, of obscure parentage, with an eighth-grade education, born No-

---

1. "§ 5031.

"For the purposes of this chapter a 'juvenile' is a person who has not attained his eighteenth birthday, and 'juvenile delinquency' is the violation of a law of the United States committed by a juvenile and not punishable by death or life imprisonment.

"§ 5032.

"A juvenile alleged to have committed one or more acts in violation of a law of the United States not punishable by death or life imprisonment, and not surrendered to the authorities of a state, shall be proceeded against as a juvenile delinquent if he consents to such procedure, unless the Attorney General, in his discretion, has expressly directed otherwise.

"In such event the juvenile shall be proceeded against by information and no criminal prosecution shall be instituted for the alleged violation.

\*   \*   \*   \*   \*

"§ 5034.

"If the court finds a juvenile to be a delinquent, it may place him on probation for a period not exceeding his minority, or commit him to the custody of the Attorney General for a like period.

"Such commitment shall not exceed the term which might have been imposed had he been tried and convicted of the alleged violation.

"The Attorney General may designate any public or private agency or foster home for the custody, care, subsistence, education, and training of the juvenile during the period for which he was committed. \*  \*  \*"

vember 19, 1943 on the Red Lake Indian Reservation in northern Minnesota, and reared by the Ramsey County Welfare Board, St. Paul, Minnesota. He was accused of having stolen an automobile on the Reservation, in violation of 18 U.S.C. § 1153, and was brought before the District Court on January 30, 1961. In the presence of Judge Donovan and counsel for the Government, he signed a consent to be proceeded against under the Juvenile Delinquency Act.[2] Prior to the signing of the consent, the Judge offered Fagerstrom the assistance of counsel, which he refused. He was carefully apprised of his rights by the Judge and by counsel for the Government in open court and fully advised of the consequences of consenting to the proceeding under the Juvenile Delinquency Act. After Fagerstrom had signed the consent, counsel for the Government filed an information alleging that Fagerstrom was subject to adjudication under the Juvenile Delinquency Act, being under eighteen years of age and having, on or about January 12, 1961, violated a law of the United States. The prayer of the information was that he "be adjudged to be a juvenile delinquent" and that he be dealt with accordingly.

Fagerstrom was arraigned on the information, which was read to him in full. He entered a plea of guilty. The case was referred to the Probation Officer for a pre-sentence report. Fagerstrom came before the Court for sentence on February 9, 1961. The Judge had received the report of the Probation Officer and was undoubtedly fully advised as to Fagerstrom's past history and present difficulty. The record shows that Fagerstrom answered promptly, courteously and intelligently all questions asked him by the Judge. He admitted having committed various offenses during the years 1954 to 1959. When asked by the Judge how he became involved in the present difficulty, he answered, "I don't know, Your Honor, I just took the car." Throughout the proceedings, Fagerstrom had consistently refused the offers of Judge Donovan to appoint counsel for him. Apparently, nothing was brought to the attention of the Judge to cause him to think that Fagerstrom was unaware of what he was doing and was incapable of understanding the consequences of his consent. The proceedings were conducted by the Court and counsel for the Government with the utmost fairness and consideration for Fagerstrom and with meticulous regard for both the letter and spirit of the Juvenile Delinquency Act. The judgment determining that Fagerstrom is a juvenile delinquent and that he be committed to the custody of the Attorney General was entered at the close of the proceedings in open court, with Fagerstrom at all times present.

After Fagerstrom's adjudication he was first taken to the Federal Correctional Institution at Englewood, Colorado, and later—apparently in December of 1961—was transferred to the United States Medical Center for Federal Prisoners in Springfield, Missouri. Thereafter he filed with the Clerk of the District Court his motion to vacate sentence under § 2255, asserting, in effect, that he, because of his youth, ignorance and insanity, did not understandingly and intelligently consent to be proceeded against under the Juvenile Delinquency

2. "CONSENT TO PROCEEDING UNDER FEDERAL JUVENILE DELINQUENCY ACT.

"I, William Virgil Fagerstrom, am 17 years old, having been born on or about November 19, 1943. I am charged with a violation of a law of the United States, to-wit, Title 18, United States Code, Section 1153, in that on or about January 12, 1961, I did at Red Lake Reservation, Minnesota, commit against the person and property of Jerry A. Eberhart, the offense of larceny within the Indian country. I understand the nature of the charge against me. The court has fully informed me of my rights, including the right to prosecution by indictment and trial by jury, and has explained the consequences of this consent. I hereby freely waive those rights and consent to a proceeding against me by an information charging juvenile delinquency pursuant to the provisions of Title 18, United States Code, Sections 5031–5033."

Act. Judge Donovan on March 14, 1962, summarily entered an order denying the motion. Fagerstrom filed a notice of appeal. The Judge granted him leave to proceed on appeal *in forma pauperis*, but declined to appoint counsel to assist him.

On July 11, 1962, this Court, at the request of Fagerstrom, appointed Mr. Sidney Lorber, of the Minneapolis, Minnesota, bar, as his counsel. We are indebted to Mr. Lorber for an excellent brief in support of the view that Judge Donovan erred in summarily denying Fagerstrom's motion for vacation of judgment, based upon his claim that he was mentally incompetent to consent to the proceedings which resulted in his being adjudged a juvenile delinquent. It is persuasively argued that the Judge should have held a hearing on the motion, in order to determine Fagerstrom's mental competency at the time he was proceeded against, or should have determined his mental condition *nunc pro tunc* in conformity with the teachings of Krupnick v. United States, 8 Cir., 264 F.2d 213, 218.

It appears that on July 31, 1962, James V. Bennett, Director of the federal Bureau of Prisons, sent a letter to the Probate Judge of Ramsey County, Minnesota.[3] A petition for Fagerstrom's commitment to a State institution as being a mentally ill person was filed in the Probate Court of Ramsey County by a representative of the Bureau of Prisons. The petition stated that: "Patient [Fagerstrom] is believed to be mentally ill, because he is destructive, hostile and antisocial. He cannot tolerate authority. He was on escape status from the State Training School at Red Wing, and was apprehended on Indian Reservation and committed to the custody of the Attorney General." Fagerstrom was committed to The State Hospital at Hastings, Minnesota, a mental institution, on August 22, 1962, but was thereafter returned to the United States Medical Center. There is in the record nothing to show when or why he was returned. It reasonably may be assumed that he was found not to be psychotic by the State authorities and was deemed ineligible for further retention by the State.

■■ To be adjudged a juvenile delinquent and committed to the custody of the Attorney General under the Juvenile Delinquency Act, is not to be convicted of or sentenced for a crime. United States v. Borders, D.C.N.D.Ala., 154 F.Supp. 214; affirmed, Borders v. United States, 5 Cir., 256 F.2d 458; United States v. Kinsman, D.C.S.D.Cal., 195 F. Supp. 271, 273. The very purpose of the Act is to avoid the prosecution of juveniles as criminals. The Act does not provide for their commitment to the custody of the Attorney General as a punishment for crime, but as a means looking toward their rehabilitation. If, after having consented to be proceeded against under the Act, and having been judicially determined to be a delinquent, a juvenile can, by asserting that he was mentally incompetent at the time he consented to being adjudicated, invoke a hearing on a motion under 28 U.S.C. § 2255, the usefulness of the Juvenile Delinquency Act will, we think, be much impaired. See and compare, United States v. Borders, supra, pages 215–216 of 154 F.Supp.;

3. "Judge of Probate Court
Ramsey County
Ramsey County Court House
St. Paul, Minnesota
"Dear Sir:
"William Virgil Fagerstrom, a federal prisoner, has been transferred to the Ramsey County Jail for the purpose of examination to determine if he is mentally ill and can be hospitalized in a Minnesota state institution. In order to accomplish this, the following is authorized:
"(a) Permission is granted for the Ramsey County Sheriff to produce Fagerstrom before Probate Court for the purpose of examination and determination of whether or not he is mentally ill.
"(b) Permission is granted to the Judge of Probate to commit Fagerstrom to the appropriate state hospital if found to be mentally ill and in need of commitment.
"(c) If Fagerstrom is not found mentally ill, he is to be returned immediately to federal jurisdiction.
"Sincerely,
"JAMES V. BENNETT
"Director
"Bureau of Prisons"

Borders v. United States, supra, page 459 of 256 F.2d; and Pamplin v. United States, 10 Cir., 221 F.2d 557.

To require Judge Donovan to have Fagerstrom brought back to Minnesota for a hearing, because of his mere assertion that he had been mentally incapable of consenting to be adjudged a juvenile delinquent, could hardly be justified and would, in all probability, be utterly futile.

In the case of Krupnick v. United States, supra, which involved an appeal from the denial of a motion of an adult to vacate a sentence on the ground that he was mentally incompetent to be proceeded against at the time of his conviction, this Court, on pages 218–219 of 264 F.2d, after pointing out that the appellant's mental competency was subject to a *nunc pro tunc* determination, said:

"* * * In initial approach to the problem, the court may desire to have the Government's psychiatrists, by whom appellant is now being treated, furnish it with a certificate, under 18 U.S.C.A. § 4245, as to whether or not 'there is probable cause to believe that such person was mentally incompetent at the time of his trial'. In his transfer to the Medical Center for Federal Prisoners at Springfield, Missouri, and in his confinement there, appellant has been under diagnosis as to his mental competency. If the psychiatric examinations, which it is evident have been made of him, suggest, in the opinion of the psychiatrists who have had him under treatment, no cause to believe that he was incompetent at the time of his conviction and sentence, in the sense of being unable to understand the proceedings against him, or properly to assist in his own defense, there should be no particular difficulty about having such a hearing as would be sufficient to dispose of appellant's motion under § 2255."

That, we think, points the way toward a safe and sane solution of the problem presented by the motion of Fagerstrom. In order to enable Judge Donovan to proceed in accordance with this suggestion from the Krupnick case, we shall vacate the order appealed from and remand the case for further proceedings. It is so ordered.