UNITED STATES of America,
Appellee,

v.

Bryan CANNIFF and John Benigno,
Defendants-Appellants.

Nos. 1142, 1197, Docket 75–1078,
75–1126.

United States Court of Appeals,
Second Circuit.

Argued June 25, 1975.

Decided Aug. 13, 1975.

Certiorari Denied Jan. 12, 1976.
See 96 S.Ct. 796.

Michael A. Young, The Legal Aid Society, New York City (William J. Gallagher, Federal Defender Services Unit, New York City, of counsel), for defendant-appellant Canniff.

Theodore Krieger, New York City, for defendant-appellant Benigno.

Lawrence B. Pedowitz, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty. for the Southern District of New York, Audrey Strauss, John D. Gordan, III, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before CLARK, Associate Justice,* MANSFIELD and MULLIGAN, Circuit Judges.

MANSFIELD, Circuit Judge:

Bryan Caniff and John Benigno appeal from convictions after a jury trial in the United States District Court for the

* Supreme Court of the United States, retired, sitting by designation.

Southern District of New York, Lee P. Gagliardi, Judge, for conspiracy to violate the federal narcotics laws, 21 U.S.C. § 846, and possession with intent to distribute and distribution of cocaine, 21 U.S.C. §§ 812, 841(a)(1) & 841(b)(1)(A). On this appeal they raise numerous points of error, none of which requires us to disturb their convictions.

## BENIGNO'S CONTENTIONS

■ Benigno first contends that he was deprived of a fair trial when the Assistant U.S. Attorney was permitted, on cross-examination of him, to inquire over objection into his past criminal convictions. While such inquiry is generally allowed in this Circuit if "for some purpose other than merely to show a defendant's criminal character," *United States v. Papadakis*, 510 F.2d 287, 294 (2d Cir. 1975); see *United States v. Deaton*, 381 F.2d 114, 117 (2d Cir. 1967), Benigno argues that it was improper and highly prejudicial in his case because the prosecutor was actually attempting to bring out his adjudication in New York as a youthful offender. Such adjudications, argues Benigno, are not convictions for crimes under federal and state law and therefore cannot be the subject of impeachment. See *United States v. Sposato*, 446 F.2d 779, 780–81 (2d Cir. 1971).

The background was that, although Benigno had admitted before taking the witness stand that he had been adjudicated a youthful offender in New York and the prosecutor had indicated that he would not use the adjudication to impeach him, Benigno testified on direct before the jury that he had never been convicted of a crime. To counter the effect of this testimony the prosecutor on cross-examination asked him whether he had ever been convicted of grand larceny, burglary or as a youthful offender in New York State. Benigno answered "No" to all of these questions and no

other proof on the issue was admitted by the trial judge. The government's questions were based on the information furnished earlier by Benigno's counsel regarding the New York youthful offender adjudication and on Benigno's FBI arrest record, which showed arrests for grand larceny and burglary. The prosecutor reasoned—correctly, it appears [1]—that one or both of the arrests formed the basis of the New York proceeding.

■ Since an arrest record alone would be a tenuous "good faith" basis to support questions concerning prior convictions for crimes, see *United States v. Haskell*, 327 F.2d 281, 284 (2d Cir.), *cert. denied*, 377 U.S. 945, 84 S.Ct. 1351, 12 L.Ed.2d 307 (1964), the permissibility of this line of questioning turns on the propriety of the inquiry into Benigno's admitted youthful offender adjudication. Without knowledge that the defendant had been adjudicated a youthful offender the prosecutor would not have known that one or more of the arrests on his record probably resulted in the youthful offender proceeding, since the State of New York does not make records of youthful offender adjudications available to the government.

■ Surprisingly, the scope of inquiry permitted by federal courts into state youthful offender adjudications does not appear to have been raised before in this or any other circuit. Under New York law (which, however, is not controlling in this federal proceeding, see *United States v. Turner*, 497 F.2d 406 (10th Cir. 1974); Rule 26, F.R.Cr.P.) use of a youthful offender adjudication for the purpose of impeachment is prohibited since the adjudication is not deemed a conviction, *People v. Rahming*, 26 N.Y.2d 411, 311 N.Y.S.2d 292, 259 N.E.2d 727 (1970); *People v. Vidal*, 26 N.Y.2d 249, 253–54, 309 N.Y.S.2d 336, 339–40, 257 N.E.2d 886, 888–889 (1970). The cross-examiner may, however, bring out the

---

1. When interviewed by an Assistant U.S. Attorney shortly after his arrest, Benigno apparently advised the prosecutor that he had been adjudicated a youthful offender based on "illegal entry."

facts underlying the adjudication so long as he does not elicit the adjudication itself. *People v. Duffy,* 36 N.Y.2d 258, 367 N.Y.S.2d 236, 326 N.E.2d 804 (1975); *People v. Rahming, supra,* 26 N.Y.2d at 419, 311 N.Y.S.2d at 299, 259 N.E.2d at 732. Thus in New York a youthful offender's credibility as a witness may be weighed in the light of any conduct on his part leading to the youthful offender adjudication which might cast doubt on his veracity. But the records and existence of the youthful offender adjudication itself must be kept secret in order to avoid the stigma normally attending a conviction for a crime, see N.Y.Crim. Proc.L. § 720.35.

■ Although there is a federal Youth Corrections Act, 18 U.S.C. §§ 5005–26, the proceeding in the federal courts most analogous to the New York youthful offender procedure is one for juvenile delinquency, 18 U.S.C. §§ 5031–42.[2] Like the New York proceeding, an adjudication in a federal court as a juvenile delinquent is not deemed a criminal conviction, see *Fagerstrom v. United States,* 311 F.2d 717, 720 (8th Cir. 1963), and may not be used to attack a defendant's credibility in a later proceeding, see *Cotton v. United States,* 355 F.2d 480 (10th Cir. 1966); 18 U.S.C. § 5038. Furthermore, the purpose of a federal juvenile delinquency proceeding, like New York's youthful offender proceeding, is to avoid the stigma of a prior criminal conviction, see *Cotton v. United States, supra.*

In view of the consistent policy running through both New York and federal law that youthful offender or juvenile delinquency adjudications are not to be treated as criminal convictions and that no stigma should attach to a young person so adjudicated, we agree that a New York state youthful offender adjudication should normally be inadmissible in federal court to attack the credibility of a defendant. In the words of the District of Columbia Circuit in a similar case:

"It would be a serious breach of public faith . . . to permit these informal and presumably beneficent procedures to become the basis for criminal records, which could be used to harass a person throughout his life. There is no more reason for permitting their use for such a purpose, than there would be to pry into school records or to compile family and community recollections concerning youthful indiscretions of persons who were fortunate enough to avoid the juvenile court."

*Thomas v. United States,* 74 App.D.C. 167, 121 F.2d 905, 908–09 (1941) (footnotes omitted); cf. *Cotton v. United States, supra* ; Rule 609(d), Federal Rules of Evidence.[3] Any other result,

---

**2.** This is apparent from the close similarity of the age groups encompassed by the two proceedings and in the treatment accorded them. A "youth" under New York law is "a person charged with a crime alleged to have been committed when he was at least sixteen years old and less than nineteen years old." N.Y. Crim.Proc.L. § 720.10. A "juvenile" under federal law is "a person who has not attained his eighteenth birthday" or a person who has not attained his twenty-first birthday and who committed a violation of the criminal law of the United States prior to his eighteenth birthday. 18 U.S.C. § 5031. Moreover, in both systems, unless the juvenile requests to be treated as an adult, no criminal prosecution is instituted against the young person, see 18 U.S.C. § 5032; N.Y.Crim.Proc.L. § 720.35(1), and the ultimate adjudication is not a criminal conviction, see *Fagerstrom v. United States,* 311 F.2d 717, 720 (8th Cir. 1963); N.Y.Crim.

Proc.L. § 720.35(1). But see *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). All records of such proceedings are to be kept sealed except in specifically enumerated circumstances. See 18 U.S.C. § 5038; N.Y.Crim. Proc.L. § 720.35.

By way of contrast, a person subject to the federal Youth Corrections Act, 18 U.S.C. §§ 5005–26, is convicted of a crime and then is eligible for the alternative sentence provided in that Act. See *Guidry v. United States,* 317 F.Supp. 1110 (E.D.La.), affd., 433 F.2d 968 (5th Cir. 1970); 18 U.S.C. § 5010. The record of this conviction is not kept sealed and it may be used to attack credibility in a later proceeding. See *Luck v. United States,* 121 U.S.App. D.C. 151, 348 F.2d 763, 767 (1965).

**3.** While not controlling in this case, the Federal Rules of Evidence do indicate the direction of federal law on evidentiary matters. Rule 609(d) provides:

while perhaps not directly violative of any legislative directive, would be wholly inconsistent with the legislative purpose behind both of these youthful offender statutes.

We reject the government's argument that the New York state adjudication should be deemed a conviction for purposes of federal law and hence a permissible subject for cross-examination, which is advanced on the ground that otherwise the federal prosecutor, absent a "conviction," might be precluded from inquiring into the facts underlying the youthful offender adjudication. See *United States v. Miles,* 480 F.2d 1215, 1217 (2d Cir. 1973). The fact remains that federal and state law is in accord that these adjudications are not criminal convictions and therefore that they cannot later be used to impeach a defendant or witness, regardless whether or not New York courts allow a cross-examiner to question a defendant about the facts underlying the adjudication.[4]

■ Although a youthful offender adjudication may not normally be used to impeach a witness, the attempt to do so in the present case does not require reversal. In the first place, the witness' own counsel, by eliciting from Benigno that he had never been convicted of a crime, opened the door to the inquiry. *United States v. Keilly,* 445 F.2d 1285, 1288–89 (2d Cir. 1971), *cert. denied,* 406 U.S. 962, 92 S.Ct. 2064, 32 L.Ed.2d 350 (1972). Despite the distinction between a conviction and a youthful offender ad-

judication, it would be unfair to the government to permit a defendant who had been adjudicated a youthful offender to create the erroneous impression that he was lily-white by implying to the jury, which cannot be expected to draw such fine distinctions, that he had never committed any offense at all. See, e. g., *United States ex rel. Rohrlich v. Fay,* 240 F.Supp. 848, 850 (S.D.N.Y.1965).

More important, there was no real prejudice to Benigno from the prosecutor's questions, see *Price v. United States,* 282 F.2d 769 (4th Cir. 1960), *cert. denied,* 365 U.S. 848, 81 S.Ct. 810, 5 L.Ed.2d 812 (1961), since the jury never learned that Benigno had been adjudicated a youthful offender. Cf. *United States v. Rivera,* 496 F.2d 952, 953 (2d Cir. 1974). He testified on direct examination that he had never been convicted of a crime, and that assertion was never contradicted. He answered "No" to all of the cross-examiner's questions on this point and no other evidence was admitted. To avoid the jury's gaining any impression from the questions, even though unanswered or answered in the negative, that there was a factual basis for asking them and therefore that convictions had in fact occurred, the trial judge clearly instructed the jury that the mere asking of a question could not support an inference of fact. In addition, Benigno's counsel rightly emphasized in his summation that his client had testified without contradiction that he had never been convicted of a crime. We feel that these statements to the jury

---

*"Juvenile adjudications.* Evidence of juvenile adjudications is generally not admissible under this rule [allowing impeachment with evidence of past criminal convictions]. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence."

4. Since no attempt was made in this case to probe into the background facts, we are not called upon to decide whether federal courts should, at least in a case where the witness

has been adjudicated a youthful offender in New York, follow that state's rule of permitting the prosecutor to impeach the witness by bringing out the facts underlying the adjudication. It is readily apparent, however, that the formulation of a federal rule on the subject would require careful study and might well be influenced by such factors as the extent to which the door has been opened upon direct examination by the witness' own counsel and whether disclosure of an adjudication (which bears the mark of society's condemnation) is less harmful to the witness and less time-consuming than to parade the underlying facts before the jury.

cured any possible prejudice to Benigno arising from the questions. The government's case against Benigno was a strong one and these questions did not increase the likelihood of his conviction. Cf. *United States v. Pfingst,* 477 F.2d 177, 188 (2d Cir.), *cert. denied,* 412 U.S. 941, 93 S.Ct. 2779, 37 L.Ed.2d 400 (1973).

 Benigno's second contention is that certain other questions put to him on cross-examination, concerning admissions that he made to an Assistant U.S. Attorney shortly after his arrest, were improper because a hearing should have been held to determine the voluntariness of the statements. Assuming that such a hearing should have been held [5] and that the questions were therefore improper, no prejudice resulted. Benigno was asked by the prosecutor whether he recalled being asked certain questions by the Assistant and answered in the negative. Once these negative answers were given no further inquiry occurred and Benigno's previous testimony stood uncontradicted. Any possible prejudice arising from the mere asking of the questions was again dissipated by the trial judge's charge that a question could not support an inference of fact. The contention that a hearing should have been held is therefore rejected.

### CANNIFF'S CONTENTIONS

 Turning to Canniff's contentions, he argues strenuously that the prosecutor's conduct was so flagrantly inflammatory that it prejudiced the jury's deliberations and denied him a fair trial. In support of this argument at least nine different types of allegedly prejudicial misconduct on the part of the Assistant U.S. Attorney during the

course of the trial are listed (e. g. (1) expressions of personal belief by the prosecutor as to the credibility of witnesses and the guilt of the defendants; (2) use of the government's prestige and its power to indict witnesses for perjury if they lied, in order to bolster the credibility of government witnesses; (3) distortion and misrepresentation of evidence; (4) attestation to facts not in evidence; (5) use of arguments designed to inflame the jury's passions against defendants; (6) interfering with counsel's questioning of witnesses; (7) use of inflammatory and improper questions; (8) arguing with defense counsel and the court; (9) use of gestures, smirking and histrionics in front of the jury during examination of witnesses). Examples of alleged prosecutorial misconduct in each of these areas are cited or quoted from the transcript.

Our review of the entire transcript, which is essential in such cases, reveals that many of the allegedly prejudicial comments in the Assistant U.S. Attorney's opening and summation have been lifted out of context and prove to be quite within the bounds of propriety when viewed in the proper frame. Other statements, which at first glance look like expressions of the prosecutor's personal belief regarding the guilt of the defendants or the credibility of witnesses, turn out upon closer examination of the entire text to be arguments fairly based on record evidence rather than personal opinions. Still other questionable statements and characterizations were in response to excesses on the part of defense counsel, who can hardly expect to gain judicial sympathy or redress for having goaded a prosecutor to skirt

5. The government now concedes that a hearing on voluntariness may have been necessary. Benigno claimed at trial that the statements were involuntary as the result of physical coercion and therefore inadmissible at trial for any purpose. The government originally argued below that the statements were admissible for impeachment purposes, relying upon *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Both parties now agree that the *Harris* rule only applies to state-

ments obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and not to statements alleged to be involuntary for other reasons. The government still argues, however, that there was not sufficient evidence of involuntariness to warrant even a hearing on that issue. Since we find no prejudice as a result of the use of the statements it is unnecessary to resolve this issue.

close to the line, see *United States v. De Angelis,* 490 F.2d 1004, 1011 (2d Cir.), *cert. denied,* 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 306 (1974) (concurring opinion). Then there were prosecutorial statements which were not objected to at trial and cannot be claimed to constitute plain error. The failure to object not only precludes our consideration of them on appeal, see *United States v. Perez,* 426 F.2d 1073, 1081 (2d Cir. 1970), *affd.,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), but indicates counsel's own difficulty in finding any prejudice.[6]

Viewing the record as a whole, it does reveal that the prosecutor, even after allowing for the leeway permitted him as an advocate for the government, see *DiCarlo v. United States,* 6 F.2d 364, 368 (2d Cir.), *cert. denied,* 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925), did tread close to the verge of prejudicial unfairness on numerous occasions and did exceed the bounds of propriety by repeated use of argumentative and irrelevant questions in his cross-examination of the defendant, by his failure to terminate lines of questioning when directed to do so by the court, and by some excessive characterization, all of which was attributable to the young Assistant United States Attorney's inexperience rather than to any calculated design on his part. However, his argumentative and irrelevant questions were, upon objection, usually cut off by the trial judge, and we are satisfied that, while his conduct was hardly a model of the fairness traditionally associated with his distinguished office, it was not so prejudicial as to seriously affect the integrity of the trial. See *United States v. Briggs,* 457 F.2d 908, 912 (2d Cir.), *cert. denied,* 409

U.S. 986, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972).

Relying upon *United States v. Roberts,* 515 F.2d 642 (2d Cir., 1975), Canniff next argues that he was denied his Sixth Amendment right to a speedy trial because between the time of his arrest and trial, a period of almost 15 months, his 26th birthday passed, cutting off any possibility of his being sentenced as a young adult offender, 18 U.S.C. § 4209, under the Youth Corrections Act, 18 U.S.C. §§ 5005–26. A critical difference between this case and *Roberts* requires us to reject this contention. In *Roberts,* the defendant, who offered to plead guilty under an agreement whereby he would testify as a government witness, first asserted his Sixth Amendment right at a pretrial conference, following which the government delayed for months its decision on whether to use the defendant as a witness, during which time his 26th birthday passed. No such circumstances are present here. In the first place, the possibility of Canniff being sentenced as a young adult offender if he should be convicted before reaching 26 years of age was never raised by Canniff or by his counsel. Secondly the government filed its Notice of Readiness more than two months before Canniff's 26th birthday, giving Canniff the opportunity to request trial at once. Yet Canniff did not press for an immediate trial or call the court's attention to the fact that it would soon be unable to treat him as a young adult offender. The passage of Canniff's 26th birthday was first noted later by the trial judge *sua sponte,* whereupon he admonished counsel that they should have brought the matter to his attention at an earlier date. Thus, unlike Roberts, who was precluded by

---

6. Canniff's heavy reliance upon *United States v. Drummond,* 481 F.2d 62 (2d Cir. 1973), in support of his argument of prejudice is misplaced. The instances of improper conduct here are not nearly so egregious as those condemned in *Drummond.* For instance, in *Drummond* the trial judge repeatedly admonished the prosecutor and threatened to declare a mistrial if the prosecutor did not alter his behavior, indicating the seriousness and extent of the alleged misconduct. In contrast, the trial judge here sustained objections to certain statements and questions, but in no way indicated a belief that the goal of a fundamentally fair trial had been thwarted.

the government's inaction from seeking an opportunity for sentence as a young adult offender, Canniff suffered no preclusion.

Although defendants and their counsel are allowed considerable leeway in delaying their demand for a speedy trial before the trial court, *Barker v. Wingo,* 407 U.S. 514, 528–29, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the issue must be raised at some point. A complete failure to raise it in the trial court, as was the case here, precludes our consideration of the issue on appeal, *United States v. Smalls,* 363 F.2d 417, 419 (2d Cir. 1966), *cert. denied,* 385 U.S. 1027, 87 S.Ct. 755, 17 L.Ed.2d 675 (1967); *United States v. Sanchez,* 361 F.2d 824 (2d Cir. 1966); see *Chapman v. United States,* 376 F.2d 705, 707 (2d Cir.), *cert. denied,* 389 U.S. 881, 88 S.Ct. 119, 19 L.Ed.2d 174 (1967); *United States v. Bennett,* 364 F.2d 499 (2d Cir. 1966), *cert. denied,* 386 U.S. 917, 87 S.Ct. 876, 17 L.Ed.2d 789 (1967); cf. *Barker v. Wingo, supra,* 407 U.S. at 536, 92 S.Ct. 2182, for the simple reason that there is nothing to review. There is no decision of the district court weighing the factors considered and no record from which we could independently evaluate the government's conduct.[7]

Canniff's last two contentions require little comment. The trial judge properly allowed the government to ask Canniff's character witnesses if they had heard of his plea of guilty to a burglary charge in 1967. *Michelson v.* *United States,* 335 U.S. 469, 479, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Beno,* 324 F.2d 582, 588 (2d Cir. 1963). There was adequate basis for the question since the government had copies of documents proving that the plea had been entered in Minnesota in 1967 and Canniff's counsel conceded its existence. Furthermore, the jury was properly instructed as to the limited import of the questions, thereby minimizing any possible prejudice to Canniff.[8]

Nor did the district court err in denying Canniff's request for inspection of the pre-sentence report prepared by the U.S. Probation Office with respect to the informer and prosecution witness Miller. The report did not constitute material required to be produced by the government under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or under 18 U.S.C. § 3500(b). The Probation Office is an arm of the United States Courts, 18 U.S.C. §§ 3654–56, and is not subject to the control of the U.S. Attorney. Therefore the prosecutor had no right to or control over copies of the report. Additionally, in this case the prosecution never saw or possessed the pre-sentence report. Clearly the government cannot be required to produce that which it does not control and never possessed or inspected. In any event, Miller conceded on cross-examination that he had not told the Probation Officer of many of his prior criminal activities, which was the fact

---

7. Canniff also claims that his trial attorney's failure to raise this Sixth Amendment issue below may have constituted a denial of his constitutional right to effective assistance of counsel and that there should be a remand and hearing to investigate this possibility. We do not agree. All district court proceedings in this case occurred before April 9, 1975, the date *United States v. Roberts,* 515 F.2d 642, was handed down. Canniff has cited no cases, and we know of none, that would have led Canniff's attorney to reasonably suspect that a Sixth Amendment question existed in this situation. Counsel's failure to anticipate such an advance in the law, even though not wholly unanticipated, does not rise to a deprivation of Canniff's constitutional right. Cf. *United States ex rel. Marcelin v. Mancusi,* 462 F.2d 36, 42 (2d Cir. 1972), *cert. denied,* 410 U.S. 917, 93 S.Ct. 977, 35 L.Ed.2d 279 (1973).

8. Although Canniff's counsel argues that the guilty plea resulted in a juvenile or youthful offender adjudication, and for that reason should not have been the subject of questions to the character witnesses, no evidence was offered in support of this contention and the government's records indicate the contrary. Moreover, it is questionable, in view of the broad range of inquiry allowed in the cross-examination of character witnesses, *United States v. Beno,* 324 F.2d 582, 588 (2d Cir. 1963), whether questions regarding knowledge of a juvenile or youthful offender adjudication would even be improper.

**574**

that Canniff desired to prove through the report.

The judgments are affirmed.