UNITED STATES of America

v.

Adolph RIVERA, Defendant.

No. 74 CR. 675.

United States District Court,
S. D. New York.

Jan. 11, 1977.

Robert B. Fiske, Jr., U. S. Atty. by Allen R. Bentley, Asst. U. S. Atty., New York City, for the United States.

Edward T. Chase, Federal Defender Services Unit, The Legal Aid Society, New York City, for defendant.

## OPINION

MOTLEY, District Judge.

The question presented by this case is whether a defendant who is indicted before his twenty-sixth birthday, but pleads guilty after his twenty-sixth birthday, can be sentenced under the provisions of the Federal Youth Corrections Act (the Act), Title 18 U.S.C. §§ 4216 and 5005 et seq., when the delay was caused both by circumstances beyond his control and by the vigorous assertion of defendant's constitutional rights.

Rivera was arrested on April 16, 1974 and arraigned before the magistrate the following day. Since defendant was without funds to employ counsel, Larry S. Greenberg of the Federal Defender Services was assigned to represent him at his arraignment on April 17, 1974. A formal indictment was not lodged against Rivera and three co-defendants until July 8, 1974.

Rivera was specifically charged with conspiracy to distribute and the actual distribution of a controlled substance, Lysergic Acid Diethylamide (LSD), under Title 21, U.S.C. §§ 812, 841 and 846. He pleaded not guilty on July 22 to conspiracy.

A hearing was held on defendant's motion to suppress certain statements made by him after his arrest on September 13, 1974. The issue was whether Rivera's right to counsel was properly waived prior to his admissions. The motion was denied. The court then allowed defense counsel to submit a brief on the different question whether the delay in arraignment after the arrest on April 16 constituted grounds to suppress these statements. A trial date of December 4 was also set at this time.

On November 13 defense counsel was notified by the court that the trial date had been adjourned for three months—to March 10, 1975—at the request of one of Rivera's co-defendants. Meanwhile, on December 24, 20 days after the originally scheduled trial date, Rivera turned twenty-six years of age and thus became "ineligible" for sentencing under the provisions of the Act.

In February of 1975, and before the next scheduled trial date of March 10, 1975, Mr. Greenberg left the Federal Defenders Service. He was subsequently replaced by Rivera's second Federal Defenders office attorney, Mr. Daniel Steinbock. As a result of this change in defense attorneys, the trial was again adjourned to July 21, 1975 to give that lawyer an opportunity to prepare and present new motions. A third adjournment was then necessitated by the fact that Mr. Steinbock's wife had accepted a brief three month period of employment as a law clerk to this judge. At the time of such employment, the court was not aware of the possible conflict. The trial was then set for October 28, 1975. The trial was again adjourned since this court was involved on October 28, 1975 in a lengthy multi-defendant trial which took eight weeks of trial time.

Meanwhile, Mr. Steinbock had made two pretrial motions: the first was the question (on which the court had requested briefs) whether the delay between the arrest and the arraignment vitiated the defendant's

waiver of his right to remain silent and his right to counsel. The second motion, which was made for the first time, sought suppression on the ground that certain statements were the fruit of an illegal arrest.

This second motion was granted at a suppression hearing on December 12, 1975 and was appealed by the Government. The Court of Appeals reversed this court's decision four months later on April 16, 1976. As a result of this appellate decision, a hearing on the arraignment delay motion was scheduled for May 26, 1976, but this hearing had to be adjourned until June 10, because Mr. Steinbock had left the Federal Defender's office to be replaced by Rivera's third assigned counsel, Mr. Edward T. Chase. This hearing was then held on June 10 and again on June 18 after the Government moved to reopen the hearing. Pending decision, the Government consented to the suppression of the statement on July 1, 1976.

On September 14, 1976 Rivera pleaded guilty to the conspiracy count of the indictment. The sentencing was scheduled for October 18, 1976. The sentence hearing was adjourned by the court so that both counsel could read the presentence report and the parties could submit briefs on the question whether Rivera could be sentenced under the Act. Although it had long been the policy of this judge to permit both defendant and defense counsel to read the presentence report in chambers at counsel's convenience, this had not been done in this case. Defense counsel advised the court that since it had suspended the sentences of all 3 co-defendants, such a suspension would be automatic in this case. Therefore, he did not bother to read the presentence report. This court's liberal policy with respect to presentence reports predated by many years any requirement to this effect. ⸙

■ The Federal Youth Corrections Act [1] provides that the sentencing judge may sentence a person under the age of twenty-six years at the time of conviction,[2] if the court finds that defendant can benefit from the liberal sentencing provisions of this Act. The most salient feature of this sentencing alternative is the provision for setting aside the conviction if a defendant placed on probation pursuant thereto successfully completes that probationary period and is discharged from probation before its expiration.[3] After review of the presentence report, this court was of the view that defendant could benefit from the rehabilitative features of the Act. However, at time of sentence this defendant had passed his 26th birthday. After considering briefs submitted by both sides, this court concludes that, under the circumstances of this case, defendant should be treated as a Young Adult Offender, despite the fact he had passed his 26th birthday at time of sentence. The reasons therefor are the following.

■ The thirty months which elapsed between the initial arrest on April 16, 1974 and the guilty plea of September 14, 1976 could not be attributed to the defendant. The trial was originally scheduled for December 4, 1974. It was adjourned at the request of Rivera's co-defendant. Although Rivera did not object to this extension, he had no duty to make such an objection. It is the court's responsibility to assure that criminal trials proceed expeditiously. Defendant need not press for a quick adjudication of his case. Speedy trial is a right to which a defendant is entitled as a matter of law. *Speedy Trial Act of 1974*, 18 U.S.C. §§ 3161, 3174; *Plan for Prompt Disposition of Criminal Cases of the Southern District of New York; United States v. Roberts*, 515 F.2d 642, 647 (2d Cir. 1975); *United States v. Didier*, 542 F.2d 1182 (2d Cir. 1976). *Accord, United States v. Vispi*, 545 F.2d 328 (2d Cir. 1976).

The second and third postponements of the trial were due to unscheduled change in assignment of defense attorneys and the fact that this judge had hired Mr. Stein-

---

1. As extended by Title 18 U.S.C. § 4216.

2. Title 18, U.S.C. §§ 5010, 4216.

3. Title 18 U.S.C. § 5021(b).

bock's wife for a special emergency. These delays were also not attributable to Rivera.

The final period of delay, from December 12, 1975 to September 14, 1976 was due to the motion practice on the part of Rivera. In December, this court found that Rivera's statement to an Assistant United States Attorney was the product of an illegal arrest. The Court of Appeals did not reverse until April 16, 1976. A second set of suppression hearings was held in June of 1976. The Government finally mooted the question on July 1, 1976 by advising the court that the statements would not be used at trial.

The delay occasioned by defendant's attempts to vindicate his constitutional rights should not result in depriving him of the opportunity to be sentenced under the Act's provisions. To hold otherwise would be contrary to the basic constitutional principle that government cannot condition the grant of a privilege on the relinquishment of a constitutional right. Congress could not have intended that defendants who are about to turn twenty-six should be faced with the choice of either abandoning any constitutional claims they may have or pursuing them and thus jeopardize any chance they may have for consideration by the court of the Act's applicability to their cases.

The Act was clearly intended to confer upon young Americans, such as Rivera, convicted of a federal felony for the first time the opportunity, if the sentencing judge agrees, to have that conviction set aside. The Act was designed to insure that worthy young persons receive a second chance to lead a useful life free from the debilitating effects of a federal felony conviction. It confers a most important benefit upon youngsters who successfully complete probation. *Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974).

To hold that the Act cannot apply to a defendant who turned twenty-six because he chose to adjudicate his constitutional rights would obviously discourage such a person from pursuing these rights. The Supreme Court, in *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), held such a chilling effect upon the exercise of constitutional rights unconstitutional. *Jackson* dealt with a federal kidnapping statute which provided that the jury could recommend the death penalty if it found defendant guilty. The statute had no death penalty provision for those who pleaded guilty or who were tried before a judge. The Court held that the statute was unconstitutional because it discouraged defendants from seeking a jury trial. It was, therefore, an impermissible burden on the Fifth Amendment right not to plead guilty and the Sixth Amendment right to a trial by jury.

The Court also rejected the argument that since the kidnapping statute was designed to mitigate the severity of punishment, its chilling effect should be ignored. "Whatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights." 390 U.S. at 582, 88 S.Ct. at 1216.

The Youth Corrections Act also seeks to mitigate defendant's punishment; but it, too, chills the exercise of constitutional rights if it forces some defendants to forego motion practice in order to reach a final adjudication of their cases before their twenty-sixth birthdays.

■ We do not, however, have to hold that the Act is unconstitutional since " '[w]hen one admissible construction will preserve a statute from unconstitutionality and another will condemn it, the former is favored even if language, . . . point[s] somewhat more strongly in another way.' [*In re Penn Central Transportation Co., Etc.,* 384 F.Supp. 895, 944 (Special Court 1974).] In other words our 'task is not to destroy the Act if we can, but to construe it, if consistent with the will of Congress, so as to comport with constitutional limitations.' *CSC v. Letter Carriers,* 413 U.S. 548, 571, [93 S.Ct. 2880, 37 L.Ed.2d 796] (1973)." *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 134, 95 S.Ct. 335, 354, 42 L.Ed.2d 320 (1974). *Accord, United*

*States v. Vuitch,* 402 U.S. 62, 70, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971). Thus, we construe the Act to allow the court to sentence a defendant under the Act if he could have been convicted but for delays beyond his control and delays due to the adjudication of his constitutional rights.

Additionally., Congress could not have intended that older young persons (those 22–26 who received the benefits of the Act when Congress extended it to young adult offenders) pay a constitutionally significant price for the Act's benefits not shared by all who come within the Act's provisions. A youthful offender (one 18–22 years old) would normally have time in which to assert any constitutional claim before becoming ineligible for the Act's benefits, whereas a 25 year old about to turn 26 would not. If it took a 22 year old 3 years, as is often the case, to prosecute his constitutional claims, he could still receive the benefits of the Act. Although a 22 year old had passed his 22nd birthday and could no longer be treated as a youthful offender, he could still be treated as a young adult offender and receive the Act's full benefits.

Other courts have interpreted the provisions of the Act in light of its purposes. For example, to be eligible to be sentenced under the Act, defendant must be under twenty-six at time of his "conviction." "Conviction" has been interpreted to mean the time the verdict is rendered or the guilty plea is entered—and not the time of sentencing—in cases where defendant reached the ineligible age between the time of verdict or plea and sentencing. *United States v. Branic,* 162 U.S.App.D.C. 10, 495 F.2d 1066 (1974); *United States v. Kleinzahler,* 306 F.Supp. 311 (E.D.N.Y.1969); *United States v. Carter,* 225 F.Supp. 566 (D.D.C.1964). This court has previously held that a guilty plea can be entered *nunc pro tunc* when defendant had turned twenty-six before his actual plea and where the plea could have been entered earlier but for the violation of defendant's constitutional rights due to the ineffective assistance of counsel. *United States v. Villar,* 416 F.Supp. 887 (S.D.N.Y.1976).

The Government cites *United States v. Canniff,* 521 F.2d 565 (2d Cir. 1975), *cert. denied,* 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976), for the proposition that a defendant cannot, under any circumstances, be sentenced under the Act if he has reached the age of twenty-six before his conviction. *Canniff,* however, did not directly deal with the issue whether a defendant can be sentenced under the Act if conviction was delayed through no fault of defendant. In *Canniff,* defendant claimed that he was denied his right to a speedy trial. Under *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the court was required to consider four factors in determining whether this right had been violated. One of these factors is the prejudice to defendant. Mr. Canniff claimed that as a result of the delay in his trial he turned twenty-six and became ineligible for sentencing under the Act.

The Court of Appeals rejected Canniff's contention for two reasons: First the Government filed its notice of readiness two months before Canniff's twenty-sixth birthday and Canniff could have, but failed to, press for an immediate trial. Rather, the District Court noted the passage of his twenty-sixth birthday *sua sponte.* However, since the *Canniff* decision, the Court of Appeals has decided *United States v. Didier, supra,* which held that "responsibility for speedy trial enforcement rests primarily on the district courts and on the government, not on the defendant. . . . " *Didier* at 1187. Thus, defendant need not vigorously assert his right to a speedy trial in order to preserve his entitlement. By analogy, defendant need not vigorously assert his need for a speedy trial in order to preserve his opportunities under the Act. Here, the turnover in Federal Defender office personnel, alone, would have operated to defeat a speedy trial.

The second ground for *Canniff's* rejection of the speedy trial claim is that this point was not raised at the District Court level. As a result, the appellate court had "no decision of the district court weighing the factors considered [in assessing the speedy

trial claim] and no record from which [it] could independently evaluate the government's conduct." 521 F.2d at 573.

*Canniff* is thus clearly distinguishable from the instant case. It does not preclude this court from sentencing Rivera under the Act.

 Adolph Rivera is a proper candidate for sentence under the Act. Rivera (according to the report of the probation office, confirmed by the Government's counsel at time of sentence, and further confirmed by this court's knowledge gained at time of plea and from sentencing co-defendants) was the least culpable of the four co-defendants. He became involved in drug dealing through peer group pressure. He picked up the package of LSD involved here at the request of his roommate, a co-defendant, with whom he had taken up residence after having left the family home unprepared to support himself or to live alone. At that juncture, Rivera, according to the report, was going through a particularly difficult emotional crisis in his own life. He had never been arrested prior to his arrest for the instant offense. There is no indication, again confirmed by the Government, that Rivera was ever involved in drug dealings beyond what is noted in the indictment. He was observed by his high school teachers as an exceptional student with an I. Q. of 145. Despite the fact that he comes from a family of modest means, he pursued a college education at the City University and has already finished 3 years of college. He is presently employed fulltime and has been for at least 3 years. He has expressed remorse over his involvement in the instant case. He has not been involved in any criminal activity since his initial arrest in April 1974.

The court finds that the case of Rivera could have been fully litigated, and Rivera could have been sentenced before his twenty-sixth birthday, if the trial had not been adjourned past its scheduled December 4, 1974 starting date. Instead, a confluence of factors beyond defendant's control resulted in a thirty-month delay between the original arrest and the final sentencing.

The court finds that the purposes of the Youth Corrections Act would best be served by making defendant's guilty plea of September 14, 1976, effective *nunc pro tunc* as of December 23, 1974, the day before his twenty-sixth birthday. Defendant will be sentenced pursuant to the provisions of 18 U.S.C. § 5010(a). Like his co-defendants, all of whom were considerably older than defendant, imposition of sentence is suspended, and defendant is placed on probation for a period of 18 months. The Probation Department and defense counsel are directed to advise the court *prior* to the expiration of defendant's period of probation whether he has successfully completed his probation.