USCA1 Opinion

 

 NOT FOR PUBLICATION ____________________
No. 91-1443 UNITED STATES OF AMERICA, Appellee, v. ANDRE LOPEZ POLANCO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ____________________ Before Selya, Circuit Judge, Coffin, Senior Circuit Judge, and Cyr, Circuit Judge. ____________________ Martha S. Temple with whom Gilbert Law Offices PA was on brief for
appellant. Margaret D. McGaughey, Assistant United States Attorney, with whom
Richard S. Cohen, United States Attorney, and Thimi R. Mina, Assistant
United States Attorney were on brief for appellee. ____________________ ____________________ CYR, Circuit Judge. Appellant Andre Lopez Polanco challenges his
convictions for distributing, conspiring to distribute, and aiding and
abetting the distribution of cocaine, in violation of 21 U.S.C. 841,
846 and 18 U.S.C. 2, on the ground that his right to the presumption
of innocence was impaired when he allegedly was compelled to appear and
remain in the courtroom on the morning of the second day of trial,
attired in identifiable prison garb. We affirm. The Supreme Court has recognized that "an accused should not be
compelled to go to trial in prison or jail clothing because of the
possible impairment of the presumption [of innocence] so basic to the
adversary system." Estelle v. Williams, 425 U.S. 501, 503-06 (1976);
see also United States v. Pina, 844 F.2d 1, 8 (1st Cir. 1988) ("[a]
defendant has a constitutional right not to be compelled to appear in
court in identifiable prison garb") (emphasis in original). The Court
has noted, however, that a defendant is free to stand trial in prison
garb if he so chooses and that "it is not an uncommon defense tactic to
produce the defendant in jail clothes in the hope of eliciting sympathy
from the jury." Estelle, 425 U.S. at 508. Appellant Polanco contends that he was compelled to appear before
the jury in the orange jumpsuit issued to him at the Maine Correctional
Center ("M.C.C."), where he was being held during trial, and that his
limited comprehension of the English language rendered any consent
unknowing and hence invalid. Upon entering the courtroom on the second morning of trial, the
presiding judge observed that Polanco was not in civilian clothing as he
had been on the first day. The court immediately initiated a sidebar
conference to inquire into the matter out of the hearing of the jury. After a brief discussion with counsel, the court excused the jury and
heard the testimony of Deputy United States Marshal Brian Beckwith, the
officer in charge of transporting Polanco from M.C.C. to the courthouse. Following the evidentiary hearing, the district court announced its
findings, based on the representations of counsel and, more importantly,
on Beckwith's testimony as to what had transpired at M.C.C. immediately
prior to Polanco's transportation to the courthouse. The court found that Polanco "appear[ed] here this morning dressed
in his prison jumpsuit as a result of his own free[,] voluntary and
knowing decision made after being advised on two occasions by Marshal
Beckwith[] that he could change [his] clothes if he wished to do so." The court further found that Polanco had in fact comprehended what was
said to him when Beckwith twice inquired in English as to whether
Polanco wished to change his clothes before leaving for the courthouse. On appeal, Polanco claims that these findings are not supported by the
evidence. The trial court's findings will not be disturbed absent clear error. United States v. Cochrane, 896 F.2d 635, 637 (1st Cir.) ("a district
court's basic . . . finding of fact may be set aside only if clearly
erroneous"), cert. denied, 110 S. Ct. 2627 (1990); United States v.
Panza, 612 F.2d 432, 440 (9th Cir. 1979) (applying clearly erroneous
standard to district court finding that defendant's clothing was not
readily identifiable as jail garb), cert. denied, 447 U.S. 925 (1980);
see also United States v. Rodriguez-Morales, 929 F.2d 780, 784 (1st Cir.
1991) ("finding[s which] derive[] abundant support from the record . .
. cannot be set aside on clear-error review"). "Where there are two
permissible views of the evidence, the factfinder's choice between them
cannot be clearly erroneous." United States v. Font-Ramirez, 944 F.2d
42, 49 (1st Cir. 1991) (quoting Anderson v. Bessemer City, 470 U.S. 564,
574 (1985)). Deference is particularly appropriate where the trial
court's findings substantially depend on credibility assessments. See,
e.g., United States v. Karas, No. 90-2103, slip op. at 9 (1st Cir. Nov.
20, 1991) (refusing to disturb district court findings which "were fact-
specific and based on credibility determinations"). Our review of the record reveals ample support for the finding that
Polanco knowingly and voluntarily elected to appear in prison issue. First, Polanco conceded, through counsel, that he had been asked twice,
while awaiting transport from M.C.C. to the courthouse, whether he
intended to wear prison garb. Second, Beckwith testified that on each
occasion Polanco responded by indicating that he did not want to change
his clothing. Third, it is apparent from the record that Polanco, after
conferring with counsel earlier in the morning, removed the "brown
covering" which he had been wearing over the orange jumpsuit. The
finding that Polanco was not compelled to appear in prison garb was not
clearly erroneous. Nor did the district court commit error in finding that Polanco
sufficiently "understood" Beckwith's invitations to change into civilian
clothing. As support for the contrary view, Polanco points to the fact
that the court appointed translators to assist at trial. He argues also
that since many inmates were preparing for transport on the morning in
question, the situation was "rife with the possibility for confusion,
especially for a person of limited English." Beckwith testified,
however, that he had not had any "problem communicating with [Polanco]
in the past in english [sic]" and that "[Polanco] always seem[ed] to
understand and answer[ed] in english [sic]." Beckwith further testified
that Polanco appeared to understand, but did not accept, the invitations
to change into civilian clothing before being transported to the
courthouse. Polanco presented no contrary evidence. Thus, Beckwith's
testimony and the compelling circumstantial evidence provided ample
support for the finding that Polanco knowingly and voluntarily elected
to appear in prison garb. Polanco nonetheless contends that the district court deprived him
of a fair trial by refusing to permit him to retrieve his civilian
clothing from M.C.C. We briefly relate the relevant circumstances. Beckwith informed the court that it would take approximately an hour to
retrieve Polanco's civilian clothing from M.C.C. When the court
offered to instruct the jury that it was altogether irrelevant whether
Polanco was in custody and that the jury must not consider it in any
way, defense counsel welcomed and was granted a curative instruction. The court then denied Polanco's request for a further delay in the
proceedings, stressing that "the damage is done now" because the jury
had observed Polanco in the jumpsuit and therefore "already ha[d] the
information before them that would be potentially prejudicial." The
court concluded that any prejudice was traceable to "the conscious . .
. and voluntary decision of this defendant" and held that "it [would]
not really serve any purpose to now change his attire." Finally, the
court directed that Polanco's civilian clothing be retrieved from M.C.C.
during the noon recess, which commenced at 11:58 a.m. At no time did Polanco object to the curative measures taken by the
district court, nor express dissatisfaction after the court refused to
permit further delay in the trial. Indeed, immediately after denying
the defense request for a delay and after granting the defense request
for a curative instruction, the court specifically asked whether either
counsel had any objection. Neither counsel objected. As soon as the jury was returned to the courtroom, the district
court gave a firm curative instruction, stating, in part, that it "would
be improper for [the jury] to consider in . . . the course of [its]
deliberations" whether the defendant was in custody. The court continued: If he is in custody that is because I as the judge in this Court have made a legal decision that affects that custody. . . . [The decision] ha[s] nothing whatever to do with the question of whether he is guilty or not guilty of the charges made against him. . . . So I instruct you that you must feel obliged under your solemn oaths as jurors to fully disregard any such conclusion if you have reached such a conclusion and you will not speculate upon any reason as to why he may be in custody.
The court then afforded counsel yet a further opportunity to object. Defense counsel neither objected nor moved for mistrial. Since the district court's actions are challenged for the first time
on appeal, we review only for plain error, limiting our inquiry to
"whether the proceedings below amounted to a miscarriage of justice." United States v. McNatt, 842 F.2d 564, 566 (1st Cir. 1988). We find no
miscarriage of justice. First, it is significant that the district court's refusal to delay
the trial even longer was in large part prompted by the irreversibility
of the perception of custodial detention voluntarily induced by Polanco. As the district court expressly recognized, the bell had already been
rung by Polanco's unilateral decision to appear in the orange jumpsuit
and no delay could serve to "unring the bell." The district court was
acutely aware that a suspension of the trial until afternoon might
merely serve to focus further attention on the dissonant note struck by
Polanco. Second, in the circumstances confronting the district court a
firm curative instruction to the jury represented a more appropriate
attempt to contain the harm set in motion by Polanco than would further
delay. Cf. United States v. Piva, 870 F.2d 753, 760 (1st Cir. 1989)
(trial court's timely curative instruction to jury eliminated or reduced
to harmless error any unfair prejudice caused by police officer's
testimony vouching for the credibility of a government informant);
United States v. Perrone, 936 F.2d 1403, 1413-14 (2d Cir. 1991) (prompt
curative instruction defused impact of prosecutor's improper comment to
jury and avoided fatal tainting of conviction). A substantial further
delay in the trial, following which Polanco would reappear before the
jury in civilian attire, may well have imparted the perception that the
problem was more portentous than indicated by the curative instruction. We are satisfied that a further trial delay, unlike the curative
instruction, could not have undone any adverse impact. Third, Polanco's
ready acceptance of the district court's proposed curative instruction
provided a cogent indication that the defense itself perceived no
persisting prejudice serious enough to warrant a motion for mistrial. See, e.g., Zeigler v. Callahan, 659 F.2d 254, 273 (1st Cir. 1981) ("by
far the strongest indication that [defendant] was not prejudiced by the
[prosecutor's alleged improper comment to the jury] is the fact that
defense counsel failed to object to the procedure"); United States v.
Friedman, 854 F.2d 535, 581 (2d Cir. 1988) (noting that appellant's
claim of prejudice due to judicial misconduct was contradicted by
failure to request mistrial), cert. denied, 490 U.S. 1004 (1989); United
States v. Canniff, 521 F.2d 565, 572 (2d Cir. 1975) (failure to object
to prosecutor's remark not only constitutes waiver but "indicates
counsel's own difficulty in finding any prejudice"), cert. denied, 423
U.S. 1059 (1976). Finally, Polanco's failure to request a mistrial may well have been
a tactical choice by which he should be bound. McNatt, 842 F.2d at 567. "It is . . . unfair to the court and the public generally if a defendant
can have two bites at the cherry by saying nothing and then coming back
and asking for a second chance." Dichner v. United States, 348 F.2d
167, 168 (1st Cir. 1965). See Reiss v. United States, 324 F.2d 680, 683
(1st Cir. 1963) (where "court took . . . all the action requested of
it[,] . . . it is too late for defendants now to suggest an alterna-
tive"), cert. denied, 376 U.S. 911 (1964); Jenkins v. United States, 251
F.2d 51, 52 (5th Cir. 1958) ("defendant will not be allowed to . . .
[let] his case go to the jury without objection and then upon conviction
take the position that the court should have granted him a mistrial upon
its own motion"). As there was no plain error, Polanco is deemed bound
by the choices he made. See McNatt, 842 F.2d at 567. The judgments of conviction are affirmed.